HENRY v. LANE.

(Circuit Court of Appeals, Fifth Circuit. February 16, 1904.)

No. 1,284.

1. PRINCIPAL AND AGENT—POWERS OF AGENT—WRITTEN AUTHORITY.

Where an agency is created by a written instrument, the nature and extent of the agent's authority are measured by the terms of such instrument, and he cannot bind his principal beyond their plain import.

2. SAME—POWER OF ATTORNEY TO SELL LAND—LIMITATION AS TO TERMS OF CONTRACT.

A power of attorney given by a landowner to his agent to contract for the sale of a tract of land on terms expressly specified, one provision being that $30,000 of the purchase price should be covered by three notes of the purchaser for $10,000 each, bearing 8 per cent. interest from date, secured by vendor's lien and a trust deed on the land, and maturing in one, two, and three years, respectively, did not authorize the agent to enter into a contract by which the purchaser was given the option of paying either or all of such notes at any time, and such a contract did not bind his principal.

3. SAME—RATIFICATION OF AGENT'S CONTRACT—WAIVER BY SPECIFIC OBJECTION.

Defendant gave a power of attorney to his agents authorizing them to contract within 60 days for the sale of certain land on stated terms and conditions. Within the time the agents signed a contract for the sale of the land, no copy of which, however, was sent to defendant. Immediately on the receipt by him of a deed for his signature, and copies of the notes and mortgage to be given by the purchaser, he telegraphed the agents that the purchaser must accept a different deed and a different description of the land, which the purchaser refused to do until after the time when the power of attorney had expired by limitation. Held, that such telegram was not a ratification of the contract in all other respects, nor a waiver by defendant of the right to refuse to carry out the same because the notes varied materially in their terms from those required by the power of attorney, it not appearing that defendant had at the time read the notes. Even if considered a waiver, it was on a condition which was not accepted until after the power of the agents to bind defendant had expired.

Appeal from the Circuit Court of the United States for the Southern District of Texas.

¶ 2. See Principal and Agent, vol. 40, Cent. Dig. § 290.

In 1901 the appellant was the owner of a tract of land in Wharton county, Tex., originally granted to Napoleon B. Williams, but patented to his heirs March 17, 1856. This tract of land was acquired by appellant in 1874, and, while it was commonly designated as the "Napoleon B. Williams league," it was found in 1898 that, according to the field notes set forth in the patent, it only embraced 4,317 acres of land instead of a full league of 4,428 acres. A resurvey was made early in 1898 for appellant under the direction of Trueheart & Co., of Galveston, Tex., when it was found that by reason of a conflict with an older survey—the Scobey grant—the tract really contained but 4,014, or 414 acres less than a league, and 303 acres less than the field notes accompanying the patent called for. This discrepancy becomes important because of the controversy arising herein relative to the quantity of land authorized and intended to be sold under the power of attorney, wherein the appellant authorized on certain terms the sale of "my Napoleon B. Williams league of land in Wharton county," while the sale alleged to have been made thereunder was for "the league of land in Wharton county, Texas, originally granted to Napoleon Williams." After preliminary correspondence with regard to the sale of the land in question, the appellant executed the following power of attorney:

"I, E. J. Henry, of the City of Princeton, New Jersey, do hereby authorize H. M. Trueheart & Co., of Galveston, Texas, to contract for the sale of my Napoleon B. Williams league of land in Wharton county, Texas, at and for the price of forty thousand five hundred and ninety-eight dollars and eighty cents ($40,598.80) and upon the additional terms hereinafter prescribed.

"1. Ten thousand five hundred and ninety-eight dollars and eighty cents ($10,598.80) of said sum to be paid in cash, and thirty thousand dollars ($30,000) thereof to be paid in three (3) notes for ten thousand dollars ($10,000) each maturing respectively one (1), two (2) and three (3) years after date thereof, and bearing interest from such date at the rate of eight per centum (8%) per annum, payable annually and containing the usual stipulation for the further payment of ten per cent. (10%) attorney's fees, and reservation of the vendor's lien, and reference to the trust deed lien; all of said notes, principal and interest and exchange, payable at the American Exchange National Bank, New York. The payment of said notes according to their terms to be further secured by trust deed of the purchaser, and by reservation in the deed of conveyance of said land of the vendor's lien and reference to the trust deed.

"2. H. M. Trueheart & Co. are authorized to add to the selling price such amount as will cover the taxes for the year 1901, their own costs, commissions and charges and counsel fee to be paid F. Charles Hume for passing on the papers completing the sale, and cost of such abstracts or examinations of title as may be necessary.

"3. My deed conveying the land by title to be executed, and delivered to the purchaser when said cash payments of ten thousand five hundred and ninety-eight dollars and eighty cents ($10,598.80) is made to H. M. Trueheart & Co., and said notes and trust deed duly executed, and the latter duly acknowledged, are delivered to them for transmission to me, after their having trust deed promptly recorded.

"4. My said deed to reserve to me, my heirs and assigns, the right and title to all minerals, oil and gas in said land and the right to enter upon said land and operate for the location, development and use thereof.

"5. The fraction of five hundred and ninety-eight dollars and eighty cents ($598.80) of said first and cash payment of ten thousand five hundred and ninety-eight dollars and eighty cents ($10,598.80) is to cover and be applied to the following items:

"(a) Paid by me for maps and surveying and other expenses, $508.80.

"(b) Revenue stamps to be paid by me on my deed conveying the land, $40.00.

"(c) Balance due by me to my attorney F. Charles Hume, for professional services, $50.00.

"Provided further that this power of attorney shall be valid and binding for sixty days from the date hereof only.

"In witness whereof I hereunto sign my name this eighteenth day of April, A. D. 1901, at Princeton, State of New Jersey.          Evan J. Henry."

The word "perfect" preceding "title" in the third clause of the said power of attorney, as contained in the original draft, was erased by appellant before signing. This power of attorney was transmitted by mail to Trueheart & Co., at Galveston, accompanied by a letter stating that the purchaser must expect "only a quitclaim deed, meaning thereby a deed of specific warranty." This is the evidence of the appellant, and it is not disputed by any of the parties. This matter is more or less important as it bears upon the intention of the appellant in regard to the title to be conveyed and the knowledge thereof to the agents, Trueheart & Co.

On the 5th day of May, the following agreement was entered into between Trueheart & Co., acting as agents for appellant, Henry, and Jonathan Lane, the appellee herein, to wit:

"$2,000. Galveston, Texas, May 5th, 1901.

"I, E. J. Henry, of the State of New York, do hereby acknowledge that I have received from J. Lane, of Houston, Harris County, Texas ($2,000.00) earnest money to close sale to the said J. Lane of the league of land in Wharton County, Texas, originally granted to Napoleon B. Williams. The said deed to said land shall reserve to said E. J. Henry, and to his heirs and assigns forever, the right and title to all mineral, oil and gas in said land and a right to enter upon said land and operate for location, development and use of said rights, provided that said location, development and use shall not interfere with the use of the surface of said land beyond what is reasonably necessary. Total price to be paid $43,000.00; terms of payment, cash, including this earnest money, on delivery of deed $13,000, so that upon the delivery of the deed there shall be paid in addition to the earnest money $11,000. One note due one year after its date, with interest at 8% per annum, for $10,000; one note due two years after date, with interest at eight per cent. per annum, for $10,000; and one note due three years after date thereof with interest at 8% per annum for $10,000. All of said notes are to be payable at American Exchange National Bank, N. Y. City, and interest on each note payable yearly at said New York bank, and each note to contain a stipulation for 10% attorney's fees in case suit is brought after maturity of said notes for foreclosure. The said notes to be paid in full at any time, at the option of the maker thereof, but not in partial payments. Notes to be secured by vendor's lien reserved in the deed and by deed of trust. All papers and interest to date from ten days after the abstract showing good title to said lands is furnished by seller to buyer. Title to the land to be good or made good within a reasonable time. In case of defect in title, which cannot be cured within a reasonable time, then upon application of buyer this earnest money shall be refunded at the office of said Lane, in Houston, Harris County, Texas. Deed and notes to be delivered and furnished at expense of seller, as well as the abstract and all other things necessary to show good title. Trust deed at expense of buyer. All back taxes, if any, to be paid by seller, and seller to pay pro rata of taxes of 1901 to date of delivery of deed to buyer; buyer to pay taxes of 1901 from date of delivery of deed to him. This sale to be finally closed up within thirty days after delivery of abstract of title showing good title to the buyer, or in default thereof, deed conveying good title having been tendered to buyer, this contract may thereupon, after five days' notice to the buyer, be declared null and void, and this earnest money may then be paid to the seller, which in said case is hereby agreed to be liquidated damages, or said seller may enforce specific performance of this contract in Galveston County at his option, provided he shall promptly elect, in case of forfeiture, which remedy he will adopt and insist upon it. Cash payment to be made and papers to be delivered at the office of H. M. Trueheart & Co., at Galveston, Texas. This contract is not transferable.

"E. J. Henry,
"By his Agents H. M. Trueheart & Co.
"I accept the foregoing contract of sale. J. Lane."

On May 6, 1901, Trueheart & Co. advised appellant by letter as follows:

"Galveston, Texas, May 6th, 1901.

"E. J. Henry, Esq., Princeton, N. J.—Dear Sir: We have the pleasure of advising you that we have closed the contract of sale of your N. B. Williams

league in Wharton County, in accordance with the written authority given us by you and all approved by your attorney, Maj. Hume. 'We will prepare deed, &c., and send forward as soon as possible, or rather will have your attorney, Hume, prepare deed, &c.

"Yours truly, H. M. Trueheart & Co.
"Dic. H. M. T."

But no copy of the alleged agreement was forwarded to or received by the appellant until after the appellant had repudiated the agreement, and after the expiration of the 60-days limit of the power of attorney. On June 11, 1901, Trueheart & Co. forwarded to the appellant letter as follows:

"Galveston, Texas, June 11th, 1901.

"Mr. E. J. Henry, Princeton, N. J.—Dear Sir: Referring to the proposed sale of your N. B. Williams league of land in Wharton County, Texas, to Mr. Jonathan Lane, we hand you herewith drafts of:

"1. Deed from you to Mr. Lane, for the land in question.

"2. Deed of trust from Mr. Lane to you, to secure payment of notes.

"3. Three purchase money notes, for $10,000.00 each.

"4. Letter from your attorney Maj. F. Chas. Hume, addressed to us, stating that the papers herewith enclosed are in proper form, &c. All of which kindly return to us, after you have executed the deed before a notary public using an official seal. Kindly see that the notary uses the form of certificate as printed on the deed, which is in conformity with the Texas statutes. Upon return of the papers to us we will proceed to close the sale with all despatch.

"Yours very truly, H. M. Trueheart & Co. G."

This was received by the appellant on June 15th, and, through the deed of conveyance and trust deed and purchase-money notes, was the first specific notification to the appellant of the actual character and terms of the alleged contract of May 6th. The conveyances and notes inclosed were in accordance with the contract, the deed containing a full warranty, and describing the land in accordance with the field notes attached to the original patent.

Immediately on receiving the foregoing papers on June 15th, the appellant forwarded to Trueheart & Co., the following telegraphic message:

"Princeton, N. J., June 15, 1901.

"H. M. Trueheart & Co., Galveston. Papers received sent my son. Purchaser must accept quit-claim deed. And land described as in your survey.
"E. J. Henry."

This telegram was answered by Trueheart & Co. in the following letter:

"Galveston, Texas, June 15th, 1901.

"Mr. E. J. Henry, Princeton, N. J.—Dear Sir: We are greatly surprised at your telegram of even date herewith. We contracted sale of your land, describing it as you described it in your written authority to us, viz., 'The Napoleon B. Williams league of land in Wharton county, Texas,' and in describing it in the deed used the field notes given in the patent, adding the words 'more or less,' and all of which was done, both in drawing the contract of sale and in drawing the deed, after consultation with your attorney, Major Hume, and submitting all of same to him.

"You did not restrict us in such authority to a quit-claim deed, and which, in Texas, is no good, and would be refused by any man of ordinary intelligence.

"We will submit your telegram to the purchaser and advise you of his reply.
"Yours very truly, H. M. Trueheart & Co. G."

And thereafter, on June 17th, for the first time, Trueheart & Co. forwarded the alleged contract of May 6th, as indicated by letter as follows:

"Galveston, Texas, June 17th, 1901.

"Mr. E. J. Henry, Princeton, N. J.—Dear Sir: Enclosed herewith we hand you copy of the contract of sale, or earnest receipt, between you and Mr. Lane; also a copy of his letter to us of the 16th inst., which explains itself.
"Yours very truly, H. M. Trueheart & Co. G."

On June 16th the appellee wrote the following letter to Trueheart & Co., which in due course was forwarded to appellant, to wit:

"Houston, Texas, June 16th, 1901.

"Messrs H. M. Trueheart & Co., Galveston, Texas. Gentlemen: Yours of the 15, together with message from Mr. Henry, received. I shall insist on the general warranty clause, and that the deed embrace all the land described and embraced in the patent, or that the price to be paid be reduced accordingly.

"Unless this is done, I shall sue for specific performance of my contract and for damages for breach thereof by Mr. Henry.

"Yours truly,                                                                    J. Lane."

The sixty-days limit of the power of attorney to Trueheart & Co. expired June 17, 1901. While the record shows many letters between Messrs Trueheart & Co. and appellee, Lane, and by them to the appellant, relating to the contract of sale, it is not pretended that any further contract was entered into between the parties.

Under this state of facts the appellee instituted suit in the Circuit Court for specific performance, relying upon the power of attorney and the alleged agreement and earnest receipt. The appellant answered the bill, wherein he charged that the contract was void, and of no force and effect against him, for the following reasons: "(1) Because in and by said alleged contract the three notes therein mentioned of $10,000 each were made payable in full at any time at the option of the complainant, Jonathan Lane, there being no authority for such provision in the said power of attorney, and it being against the interest of this defendant that said complainant should have such privilege, inasmuch as the said promissory notes were to draw interest at the rate of eight per centum from their respective dates—one for the full term of one year, one for the full term of two years, and one for the full term of three years; (2) because in and by said alleged contract it was provided that the title to the lands to be conveyed by this defendant should be good or be made good to the said complainant within a reasonable time, there being no provision in the said power of attorney authorizing the said H. M. Trueheart & Company to make any such covenant on the part of this defendant; (3) because in and by said alleged contract it was provided that the deed of conveyance to be executed by this defendant to the said complainant, and the said three notes to be given by the said complainant to this defendant, and the abstract of title, and all other things necessary to show good title, should be furnished and delivered at the expense of this defendant, there being no authority for such provision in the said power of attorney; (4) because in and by said alleged contract it was further provided that all back taxes imposed upon said lands, and a proportionate part of the taxes for the year 1901, should be paid by this defendant, there being no such provision authorized in and by said power of attorney; (5) because in and by said alleged contract it was provided that this defendant should execute and deliver to said complainant a deed of conveyance for the league of land in Wharton county, Texas, originally granted to Napoleon B. Williams, whereas in and by the said power of attorney the said H. M. Trueheart & Company were only authorized to contract for the sale of lands in Wharton county, Texas, set forth in the survey and maps previously made by the direction of said H. M. Trueheart & Company, and which in and by said power of attorney were described as 'my Napoleon B. Williams league of land in Wharton County, Texas'; (6) because in and by said alleged contract the rights of this defendant as against the complainant in case of the complainant's default or breach of contract were limited in a manner not authorized in and by said power of attorney." And otherwise appellant put at issue all matters charged in the bill.

On final hearing on the evidence in the case and on waivers of alleged rights of the appellee, the court rendered a decree by which it established an entirely different contract from that authorized by the power of attorney, and different from that alleged to have been made between the parties in the so-called agreement and earnest receipt, and then proceeded to decree specific performance of the same.

On this appeal the following are errors assigned:

"(1) Because the alleged contract sought to be enforced was unauthorized by defendant, and void for the reason that it varied materially from the power

of attorney executed by the defendant in providing that the maker of the notes therein provided for should have the right at his option to pay the same at any time.

"(2) Because the alleged contract sought to be enforced was unauthorized by defendant and void because of a material departure from the power of attorney executed by the defendant in requiring that the title should be good, or that the defendant should make it good within a reasonable time.

"(3) Because the alleged contract sought to be enforced was unauthorized by defendant and void for the reason that it varies from the power of attorney executed by defendant in providing for a cash payment of two thousand dollars instead of ten thousand five hundred and ninety-eight dollars and eighty cents, leaving the balance of the first payment to be made in thirty days after delivery of an abstract of title.

"(4) Because the alleged contract sought to be enforced was unauthorized by defendant and void because of a material departure from the power of attorney executed by the defendant in requiring the defendant to show good title to the land instead of merely to convey such title as he had.

"(5) Because the alleged contract sought to be enforced was unauthorized by defendant and void because of a material departure from the power of attorney executed by the defendant in requiring defendant to pay all back taxes, a portion of the taxes for 1901, and the expense of the abstract.

"(6) Because the alleged contract sought to be enforced was unauthorized by defendant and void because of a material departure from the power of attorney executed by the defendant in limiting the rights of the defendant in case of breach of the contract by the complainant.

"(7) Because the alleged contract sought to be enforced was unauthorized by defendant and void because of a material departure from the power of attorney executed by the defendant, in that as construed by complainant and by H. M. Trueheart & Co. it required defendant to convey the land described by and according to the field notes in the patent to the heirs of Napoleon B. Williams, instead of the land described by the field notes prepared by H. M. Trueheart & Co. upon the resurvey made by them.

"(8) Because the alleged contract sought to be enforced was unauthorized by defendant and void because of a material departure from the power of attorney executed by the defendant, in that it sought to bind defendant to execute a deed containing covenants of general warranty.

"(9) Because the alleged contract sought to be enforced was never executed by defendant, nor by any person or persons authorized by him.

"(10) Because the only authority possessed by H. M. Trueheart & Co. to act for defendant was conferred by the power of attorney dated April 18, 1901, and was thereby carefully specified and strictly limited, and the alleged contract sought to be enforced was unauthorized thereby.

"(11) Because the inadequacy of the price, coupled with the other circumstances in evidence, renders it inequitable to compel defendant to convey the land upon the terms stipulated in the alleged contract of sale.

"(12) Because the evidence shows that H. M. Trueheart & Co., who signed the alleged contract as agents for defendant, procured the power of attorney from defendant at the instance of complainant for the purpose of enabling complainant to purchase said land, and shows efforts upon their part to consummate said sale regardless of the interest or wishes of defendant, and under such circumstances it would be inequitable to enforce said alleged contract.

"(13) Because the evidence shows that defendant never intended to convey according to the field notes in the patent, as demanded by complainant, nor to convey with covenants of general warranty, as demanded by complainant, and that, therefore, and in view of the ambiguity of the contract, the minds of the parties never met.

"(14) Because the failure of the minds of the parties to meet the ambiguity of the contract respecting the land to be conveyed, the difference in the situation of the parties, the conduct of the alleged agents, and the inadequacy of the price as shown by the evidence, renders it inequitable to specifically enforce the alleged contract.

"(15) Because the evidence shows that defendant has never owned about three hundred acres of land which it is sought to compel him to convey, and it would be against equity to compel him to convey land which he does not own.

"(16) Because the court in and by said decree requires the making and execution of a contract which neither the complainant nor the defendant ever agreed to make or execute, and which departs from the alleged contract sought to be enforced, and from the bill of complaint with respect to, first, the time in which the deferred payments should be made; second, the right of the maker of the notes, at his option, to pay the same before maturity; third, the quantity and description of the land to be conveyed; fourth, the covenants of warranty in the conveyance of said lands; fifth, the remedy of complainant in case of deficiency in the quantity of said land; sixth, the trustee to be named in the deed of trust required to be given to secure the notes for the deferred payments; seventh, in not reserving the mineral rights in said land to the defendant; and in other particulars.

"(17) Because the complainant was not entitled to any relief against the defendant because upon the pleadings and the evidence a decree should have been entered dismissing the bill of complaint and awarding defendant his costs."

Jas. A. Baker, R. S. Lovett, and W. M. Lanning, for appellant.

H. M. Garwood, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts as above). An inspection of the transcript will show that, while the complainant below sets forth, and asks specific performance of, the agreement of May 5, 1901, as binding upon the appellant, Henry, yet the decree herein appealed from does not conform to the said agreement. The decree commences by holding that the alleged contract ought to be specifically enforced, but then proceeds by changes here and there to make a materially different contract from that alleged, and require the execution of an agreement and trade which no one contends the parties ever made. Some of the particulars in which the decree varies from the alleged contract are as follows:

(1) The contract provides that the notes for the deferred payments shall date "ten days after the abstract showing good title to said land is furnished by seller to buyer." The record shows that the abstract was forwarded to Lane on or about May 9, 1901. It was received by Lane, examined, and forwarded by him to Trueheart & Co. prior to May 15, 1901. By the terms of the contract, therefore, the notes should bear date not later than May 25, 1901. The decree, however, requires the notes to bear even date with the decree, which is April 17, 1903.

(2) The contract expressly reserved to the maker of the notes the right to pay the same at any time at his option, "the said notes to be paid in full at any time at the option of the maker thereof." The decree provides simply that said notes shall be "due and payable respectively in one, two, and three years from their said dates," and there is no clause giving the maker the right to pay them off at any time at his option.

(3) The contract provides that appellant shall convey to Lane "the league of land in Wharton county, Texas, originally granted to Napoleon B. Williams." The decree provides that appellant shall convey to Lane the land described by field notes in the patent to the heirs of Napoleon B. Williams, but further provides that, in the event there shall be a shortage in said league, and the same contains less than 4,428 acres, then the appellant shall not be liable in any

manner therefor, and said Lane shall not be entitled to an abatement of the unpaid purchase price on account of the shortage, and that this provision shall be inserted in the deed.

(4) The decree provides that appellant shall convey "with covenants of special warranty." The contract provides, "Title to the land to be good, or to be made good within a reasonable time," clearly requiring a general warranty of the title.

(5) The decree provides that, if there shall be a shortage in the land, appellee shall not be entitled to any abatement of price on account thereof. Under the contract of May 5th, in case of failure of title to any of the land conveyed, appellee would be entitled to a pro rata abatement of the purchase price.

(6) The contract of May 5th does not name a trustee for the deed of trust given by the appellee to secure the deferred payment of the purchase price, or allow him any commissions. Under such circumstances the trustee should be named and his commissions fixed by agreement, but the decree names F. Charles Hume as trustee for the deed of trust, without reference to the wishes of either of the parties, and allows him 5 per cent. commissions.

(7) The contract expressly provides that the deed to the said land "shall reserve to the said E. J. Henry and to his heirs and assigns, forever, the right and title to all minerals, oil, and gas in said land, and the right to enter upon said land and operate for location, development, and use of said right." But the decree wholly fails to make any provision whatever for reserving said mineral rights to appellant. It is true that on June 21, 1903, the judge of the Circuit Court undertook to make an order curing this omission, but that order was made after the adjournment of the term, the allowance of the appeal, the filing of the bond, and the issuance and service of the citation.

From this it would seem that the decree appealed from should be radically amended, if not entirely reversed.

But underlying the whole matter is the question whether the alleged contract and earnest agreement entered into on May 5, 1901, between the appellee Lane, and Trueheart & Co., as agents for the appellant, was and is a valid existing contract; and that depends upon whether or not the said earnest agreement was authorized by the special power of attorney granted by the appellant on April 18, 1901, giving authority to Trueheart & Co. within 60 days to contract for the sale of certain lands on certain terms therein specified. It is well settled that when an agent acts under special authority conferred by a formal instrument his powers must be ascertained from the instrument itself. The rule is given by Judge Moore in Reese v. Medlock, 27 Tex. 120, 84 Am. Dec. 611, as follows:

"It is a well-settled general principle that, when an agency is created and conferred by written instrument, the nature and extent of the authority given by it must be ascertained from the instrument itself, and cannot be enlarged by parol evidence of the usage of other agents in like cases."

In Skaggs v. Murchison, 63 Tex. 348, the rule is declared:

"It is so well settled as to be elementary that powers of attorney and similar instruments have to be strictly construed, and that under no circumstances will the principal be bound beyond the plain import of the instrument."

See, also, Gouldy v. Metcalf, 75 Tex. 455, 12 S. W. 830, 16 Am. St. Rep. 912; Holladay v. Daily, 19 Wall. 610, 22 L. Ed. 187; Mechem on Agency, § 409.

The appellant, by his power of attorney, authorized Trueheart & Co. to contract for the sale of "my Napoleon B. Williams league of land in Wharton county, Texas." There is no doubt that the appellant intended by this description of the land to be sold the Napoleon B. Williams league as reduced and restricted by the then recent survey procured through Trueheart & Co., whereby it clearly appears that the said league contained only 4,014 acres of land, instead of 4,317 acres, as called for by the field notes accompanying the original patent. There is no doubt, either, that Trueheart & Co. fully understood the power of attorney to refer to the league as restricted by the last survey. No other conclusion can be reached from the evidence. There is some evidence in the record tending to show that appellee, Lane, the claimed purchaser, knew all about the surveys; knew that Henry really owned but 4,014 acres; and also knew thereby and from preliminary negotiations of appellant Henry's intention to sell only the lands he owned. The alleged contract provides for sale by the appellant to appellee, Lane, of the league of land in Wharton county originally granted to Napoleon B. Williams, which would call for 4,317 acres following the original field notes, and makes appellant liable for any deficiency.

The power of attorney, as originally drafted, provided for appellant to give a deed by perfect title. Before executing the instrument, however, the word "perfect" was stricken out, so that the power of attorney provided for "my deed conveying the land by title to be executed." There is no doubt whatever that by this provision the appellant intended only to give a quitclaim deed with special warranty. He so notified the agents, Trueheart & Co., in a letter transmitting the power of attorney. There is evidence in the record tending to show that the appellee, Lane, knew of this intention to restrict the title given; yet the contract as claimed provides that the title to the land shall be good, practically calling for a deed with full warranties. The record abounds with evidence on these propositions, and counsel in their briefs have threshed it out in the light of adjudged cases and on principle; but we do not find it necessary to rule definitely on either, because we think that there is an unquestioned variance between the power of attorney and the alleged contract which requires us to hold that the appellant Henry was not bound by the agreement of May 5, 1901. The alleged contract is void because of a material departure from the power of attorney in providing that the notes might be paid at any time, at the option of the maker, whereas the power of attorney stipulated that they should mature in one, two, and three years after date. The power of attorney left no discretion whatever to the agents respecting the terms of sale. It stipulated absolutely for $10,598.80 in cash, and for three notes of $10,000 each, maturing in one, two, and three years after date, and bearing interest from date at the rate of 8 per cent. per annum, payable annually. It was not a general, but a special, power and agency that was conferred and created. Appellee knew the charac-

ter of the agency and of the particular limitations upon the power conferred. He would not even negotiate until the agent should obtain and produce authority in writing as suggested and demanded by him. When the power of attorney was executed and sent to the agents, the latter satisfied appellee of its existence, and furnished him a copy of it. The power of attorney was the sole measure of the agents' authority. It specified in detail the terms upon which appellant was willing to sell, and, whether wise or unwise, beneficial or prejudicial, they were the terms which appellant chose to name; and Trueheart & Co. and appellee were powerless to change them. It was appellant's land. As the owner he had the right to specify the terms upon which he would sell his own property. No matter how absurd or unreasonable his terms might be, it was, in the very nature of things, his right, as owner of the property, to fix his own terms, and Lane had either to assent thereto or decline to buy.

As a matter of fact, the departure which Lane and Trueheart & Co. made in stipulating that the notes for the deferred payments might be paid at any time, at the option of the maker, was materially and substantially to the detriment of appellant. Eight per cent. is a high rate of interest in these days, even in Texas. Five per cent., no doubt, would have been considered a good rate in New Jersey. These notes afforded appellant a safe investment for a large sum of money for a considerable period. Notes, $10,000 for one year, $10,000 for two years, and $10,000 for three years, at 8 per cent. interest, with first-class landed security, and payable in bank in New York, were and are worth above par. It is evident, therefore, that, even if the question depended upon the materiality of the variance, the departure made by Trueheart & Co. and Lane from the power conferred and from the instructions given by appellant was material, and was substantially detrimental to the interests of appellant.

It has long been settled that the legal effect of an instrument payable on a date certain is different from that of an instrument payable on or before that date. Kikindal v. Mitchell, 2 McLean, 402, 14 Fed. Cas. 468, No. 7,763. In that case there was no express provision that the obligor should have the right to pay the note, at his option at any time before the date, but the court held that the words "on or before" gave the obligor that right, and that this was a right which, without these words, he did not have, and, further, that this made a material difference. In the instant case it is not left to be inferred from the use of the words "on or before," but it is expressly stipulated in the alleged contract that "the said notes to be paid in full at any time, at the option of the maker thereof." The power of attorney, on the other hand, provides that the notes shall mature, respectively, one, two, and three years after date, and makes no provision for the payment of the notes before their maturity. It is clear, then, that the alleged contract gave the maker of the notes a right which was not authorized by the power of attorney.

In Everman v. Herndon, 71 Miss. 827, 15 South. 135, which was a bill in chancery for specific performance of an alleged contract to sell land, the Supreme Court of Mississippi said:

"Looking to the only authority given by Herndon to Cross Bros. to make sale of the land, it is found to be limited to that of accepting the $4,000 propo-

sition. * * * This firm was specially authorized to do and perform one particular act, viz., to accept a definite proposition which had before then been submitted to Herndon. Nothing is better settled in the law than that one dealing with an agent expressly appointed to do a particular act must inform himself of the extent of authority conferred, and must see to it that the act done is within the authority. * * * They (Cross Bros.) were authorized to accept the $4,000 proposition, which was to pay that sum half in cash and the balance in one and two years, with interest at 8 per cent. per annum from date. They entered into an agreement under which the whole purchase price was payable in cash, which may have been a better or worse contract than that they were authorized to make. determinable by circumstances, but which was certainly not the contract they were directed and empowered to make. In legal effect, here was an offer by Herndon to sell his land at a fixed price, half in cash and the remainder in one and two years, with interest at 8 per cent., and a counter proposition by Everman & Blanton to buy at the price named, payable in cash. There is not a legal identity between the contract which Cross Bros. were authorized to make and the one they attempted to make, and their principal, Herndon, was not bound."

Batty v. Carswell, 2 Johns. 48, 1 Am. Leading Cas. 653; Schultz v. Griffin, 121 N. Y. 294, 24 N. E. 480, 18 Am. St. Rep. 825.

The complainants in that case offered either to pay for the land all in cash, or to pay one-half cash and the remainder at one and two years, with interest at 8 per cent. per annum. Counsel contended that, as the terms were not expressly stipulated in the contract, nor signed by Cross Bros., it should be construed, under all the circumstances, to mean that the payments were to be as specified by Herndon, one-half cash, and the remainder in one and two years, with 8 per cent. interest. But the court said:

"This would be to make a contract by construction different from that actually entered into by the parties. Clearly, under the written agreement signed by Cross Bros., the complainants would have been entitled to make instant payment of all the purchase price of the land. * * * Looking through the whole record, we find that the defendant, Herndon, agreed to sell his land for $5 per acre, one-half in cash and the balance in one and two years, with interest at 8 per cent. * * * Cross Bros. were authorized by Herndon to make sale on the terms of his offer. They in fact made an agreement for him to sell on different terms from complainant's offer, which act on their part was never ratified by Herndon. On these facts the law is with the defendant."

In Monson v. Kill, 144 Ill. 248, 33 N. E. 43, Anton Kill gave Monson authority to sell an acre lot of ground in Evanston, Ill., for $12,000 net. "Whatever you get over and above this amount is your commission. Terms, $6,000 cash, balance in one, two, and three years, with 6 per cent. interest." Monson, in the name of Kill, entered into a contract with one Beveridge, by which Beveridge agreed to purchase for the sum of $12,000. The contract recited that the purchaser had paid $500 purchase money to be applied on the purchase when consummated, and agreed to pay within 90 days after the title had been examined and found good the further sum of $5,500, at the office of Monson, provided a good and sufficient warranty deed, etc., should be then ready for delivery. It further provided that the balance should be paid in three equal installments of $2,000, due, respectively, on or before one, two, and three years after the date of the contract. The contract was placed of record, and Kill filed a bill in equity to cancel the contract. A decree was rendered in accordance with the prayer of the bill, and on appeal the Supreme

Court of Illinois affirmed the decree canceling the contract, as unauthorized on the part of the agent, and said:

"If it be conceded—which is unnecessary to determine—that Monson had authority to execute the contract with Beveridge, and to extend the time ten days for the examination of the abstract by the purchaser, there was still a clear departure from the power and authority given. The authority to sell for one-half cash in hand is in no sense complied with by a sale on ninety days' time. The authority was special and limited, and the purchaser was required to know that the authority must be strictly construed. Beveridge took from Monson a contract in writing, and, in the absence of proof to the contrary, will be presumed to have known of Monson's authority to sell. There is nothing in the case tending to show that Beveridge was led to deal with Monson as a general agent. * * * Again, the authority to sell the land and to make the balance over and above the cash payment payable in one, two, and three years, did not authorize the making of the contract that such payments might be made on or before said time, at the option of the purchaser. This precise question arose in Siebold v. Davis et al., 67 Iowa, 560 [25 N. W. 778]. * * * Appellee had the right to prescribe the terms upon which his land should be sold, and, having done so in express terms, the stipulation must be substantially followed."

Siebold v. Davis, 67 Iowa, 560, 25 N. W. 778, referred to by the court in Monson v. Kill, was an action in chancery to enforce the specific performance of a contract for the sale and conveyance of land. The specific performance was refused by the court below, and the judgment was affirmed by the Supreme Court of Iowa. The authority to sell in that case was conferred by letter from Pierce, the owner of the land, to Ostrom and Messinger, the agents who made the contract. The plaintiff offered $2,000 for the land—$500 cash and the balance in five equal payments. The agents communicated this offer to Pierce, and Pierce, in a letter, replied: "I will only make three notes of $500 each for balance. They can have all the time they want, say three, four, and five years; but I won't make little bits of payments out of $1,500." The agents then executed in favor of Siebold a receipt for $500 as the first payment on the land reciting that it was sold for $2,000, "to be paid as follows, to wit, $500 in hand paid, the receipt whereof is hereby acknowledged, and the balance of the two thousand dollars in three equal payments; the first deferred payment on or before three years from date of deed; all deferred payments to draw interest at 8 per cent. per annum." The Supreme Court held that, because the contract makes the three deferred payments payable on or before three, four, and five years from date, where the seller only authorized them to be made payable three, four, and five years after date, there is such a variance between the authority conferred upon the agent and the contract made by him as to render the contract unenforceable. Upon this ground specific performance was denied.

In the case of Jackson v. Badger (Minn.) 26 N. W. 908, that court, without stating the facts of the case, said:

"In respect to the time for the payment of the deferred portion of the purchase price, the contract made by the agent, and upon which this action is brought, was substantially different from the terms of sale dictated by the defendant, and, so far as appears, he was not bound thereby. Making the $3,000 payable on or before three years was not in accordance with the prescribed condition that it should be payable in three years."

And see Miller v. Sawbridge (Minn.) 13 N. W. 671.

The alleged contract is not a separable contract. Plainly, it is one and indivisible, all the terms being interwoven and interdependent. If the agents exceeded their authority in signing the contract on behalf of appellant, then it plainly does not bind him; and, appellant having repudiated it as soon as the papers were presented to him, there is no basis in law or equity for sustaining any suit against him.

There remains to dispose of the question of waiver or ratification. Immediately upon the receipt by the appellant of the proposed conveyances for him to sign in order on his part to complete the sale of the land in question, to wit, on June 15, 1901, the appellant forwarded to the agents, Trueheart & Co., a telegram as follows: "Papers received sent my son. Purchaser must accept quitclaim deed, and land as described in your survey." This telegram was the same day communicated to the appellee, Lane. There is very little, if anything, in this telegram to express acceptance or approval. It indicates that delay was necessary to examine the papers, and declares disapproval with regard to the title to be given and the description of the land. It is reasonably well settled that the principal cannot be held to conclusively approve or ratify the acts of an agent when he is in ignorance of the nature of such acts. At the time this above telegram was sent, the appellant was ignorant of the details and provisions of the agreement which had been made by Trueheart & Co., on his behalf, with reference to the sale of the land. While it cannot be said that its existence had been concealed from him, it is true that, although requesting the same, he had not been furnished with a copy. The general rule is that ratification will not be inferred from any act or declaration of the principal unless he acts with full knowledge of the material facts. See Owings v. Hull, 9 Pet. 607, 9 L. Ed. 246; Bennecke v. Insurance Co., 105 U. S. 360, 26 L. Ed. 990. Halsey v. Monterio (Va.) 24 S. E. 258. But, passing this, it is plain on the face of the telegram that, if it was intended as a ratification or waiver, it was only upon two conditions, not embraced in the alleged agreement of May 5, 1901: First, the purchaser must accept a quitclaim deed; and, second, that the description of the land was to be according to the then recent survey superintended by Trueheart & Co. As said above, the telegram of Henry was immediately communicated to appellee, Lane, and he refused to accept either one of the conditions, for on June 17th he wrote a letter to Trueheart & Co., as follows:

"Yours of the 15th inst. together with message from Mr. Henry received I shall insist on a general warranty clause and that the deed embrace all the land described and embraced in the patent, or that the price to be paid be reduced accordingly. Unless this is done I shall sue for specific performance of my contract, and for damages for breach thereof by Mr. Henry."

This letter was duly forwarded to the appellant, and ended all correspondence and negotiations, so far as the appellant was concerned. All other correspondence between Trueheart & Co. and appellee, Lane, some of which was forwarded to appellant, Henry, but not answered by him, was after the 60-days limit of the power of attorney of April 18, 1901, had expired. Of course, after the power of attorney expired by limitation, the appellant was not in any wise bound by

any declarations of his agents, Trueheart & Co., or by concessions made by the appellee. Many other matters are developed in the evidence, and interestingly discussed in the briefs, but we do not find it necessary to consider them.

For the reasons given, we are satisfied that the appellant was not bound by the agreement and earnest receipt made by Trueheart & Co. with the appellee, Lane, on the 5th of May, 1901, and that the appellee has no right to the enforcement of that agreement.

The decree of the Circuit Court is reversed, with costs, and the cause is remanded, with instructions to make such disposition of moneys paid into court as equity may require, and thereupon dismiss the bill, with costs.