COLORADO TITLE & TRUST CO. v. CHILDERS et al.

(Circuit Court of Appeals, Fifth Circuit. April 21, 1917.)

No. 2960.

1. BANKS AND BANKING ⬥158—NOTES PAYABLE AT BANK—PAYMENT—PAYEE AS AGENT OF HOLDER.

That notes by their terms were made payable at the payee bank did not make such bank the collecting agent of a bank to which they were indorsed and transferred before maturity.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 542–546.]

2. BILLS AND NOTES ⬥537(8)—PAYMENT—PAYEE AS AGENT OF HOLDER.

On the issue of whether a payee bank at which notes secured by a chattel mortgage were payable was the agent of a bank to which it transferred the notes, without the maker's knowledge, with authority to receive payment, evidence *held* not to warrant a directed verdict for the maker, though raising a strong presumption that he had a right to believe that it was such agent.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1885, 1886.]

Walker, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the Northern District of Texas; Edward R. Meek, Judge.

Action by the Colorado Title & Trust Company against J. G. Childers, Jr., and others. Judgment for the defendant named, and plaintiff brings error. Reversed and new trial ordered.

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

This is a suit at law instituted at the Ft. Worth branch of the United States District Court for the Northern District of Texas. The suit was filed October 16, 1915, by the Colorado Title & Trust Company, as plaintiff, for convenience called "Colorado Bank." J. G. Childers, Jr., the Ft. Worth Savings Bank & Trust Company and Brown Harwood, its receiver, were the defendants in the case. The Ft. Worth Savings Bank and Trust Company for brevity will be called the "Ft. Worth Bank."

The transaction made the basis of the suit of the Colorado Bank is, briefly stated: October 5, 1914, Childers executed his promissory note, in writing, in the sum of $7,734. October 22, 1914, he executed another promissory note in the sum of $1,634, both notes payable to and at the Ft. Worth Bank, both due June 21, 1915, both bearing 10 per cent. interest from maturity. In the early part of November, 1914, long prior to the maturity of these notes, they were purchased by the Colorado Bank from the Ft. Worth Bank, the Colorado Bank paying the face of the notes, less 8 per cent. discount for the period the notes were to run. The notes were properly indorsed by the Ft. Worth Bank when they were sold to the Colorado Bank, so as to preserve the liability of the Ft. Worth Bank, as the indorser thereof. In addition to the ordinary indorsement of this paper, the Ft. Worth Bank executed to the Colorado Bank a separate and additional written contract, by the terms of which, the Ft. Worth Bank expressly guaranteed the payment of the notes, together with all interest that might accrue thereon, and by this instrument waived presentment and demand of payment of the maker thereof, also waived notice of protest, etc. Notice of the transfer of these notes was never given to Childers, nor did he otherwise know of it. On July 23, 1915, the Ft. Worth Bank being insolvent, its business was closed, and Harwood was appointed receiver by one of the state courts of Tarrant county, Tex.

The matter in controversy in this litigation, between the Colorado Bank and the other defendants, above named, was whether or not there had been a payment of these notes. The notes were secured by a chattel mortgage given by Childers to the Ft. Worth Bank on certain cattle located in Southwest Texas. In the early part of the month of July, 1915, these cattle were sold by Childers, and the drafts which were made to him by the commission house in payment of the cattle were, by the direction of Childers, sent to the Ft. Worth Bank, with instructions that the proceeds of the drafts be applied to the payment of these notes as far as the proceeds would go. In this way sufficient funds were sent by Childers to the Ft. Worth Bank to have paid off the notes, except the sum of $662. These proceeds went into the Ft. Worth Bank on various dates between July 8 and July 17, 1915. The Ft. Worth Bank on the receipt of these drafts cashed them at the First National Bank in Ft. Worth, Tex., taking credit to itself in that institution for the amount of the drafts, and gave Childers credit on its own books for the amount. The Ft. Worth Bank embezzled the money. At a later time and after the closing of the doors of the Ft. Worth Bank and the appointment of a receiver thereof, Childers paid the $662 balance to the Colorado Bank, which was done without prejudice. The contention then, between the Colorado Bank and Childers, as stated above, was, whether the placing of these funds in the Ft. Worth Bank was payment of the notes. The Colorado Bank urged that, inasmuch as it had possession of its securities, and that they were never sent to the Ft. Worth Bank for collection or held by it in any other way, and inasmuch as no authority had been given to the Ft. Worth Bank by the Colorado Bank to collect, as agent for the Colorado Bank, these notes, the depositing of the funds by Childers in the Ft. Worth Bank was not a payment of the securities.

Childers urged that the depositing of these funds by him in the Ft. Worth Bank constituted payment, for that the Ft. Worth Bank had been appointed by the Colorado Bank as its collecting agent to collect these notes, and in the alternative, if this were not true, that by the course of dealing between the banks, and by custom the Colorado Bank was estopped from asserting the want of authority on the part of the Ft. Worth Bank to collect these notes for the Colorado Bank.

The evidence upon which defendant in error, Childers, contended authority was conferred by the Colorado Bank upon the Ft. Worth Bank to act as col-

lecting agent for these notes was this, in substance: June 10, 1915, the president of the Colorado Bank wrote the Ft. Worth Bank: "We hold two promissory notes of J. G. Childers, Jr., both falling due on the 21st inst., one being for $7,734 and the other for $1,634. We wish to advise you in good time that we do not expect to be in the market this month for any cattle paper, and we hope that it will be convenient for you to take these notes up promptly." The Ft. Worth Bank, June 15th, replied: "Answering your letter will say we have notified Mr. Childers that we will expect his paper paid. We may not be able to get the money to you the day the paper is due, but it will be there either at maturity or immediately thereafter." July 3d, the Colorado Bank wrote the Ft. Worth Bank thus: "We expected ere this to receive remittance for two notes of J. G. Childers, Jr., for $7,734 and $1,634, respectively, both due June 21st. By your last letter you led us to believe that remittance to cover would have reached us long ere this. We await your prompt reply." To this the Ft. Worth Bank July 6th, answered: "Replying to yours of the 3d inst. regarding the J. G. Childers, Jr., paper beg to advise that Mr. Childers is now shipping his cattle and as soon as they have been sold on the market the money will be forthcoming to retire his paper which you hold. We are very sorry this matter has dragged along for so much past the maturity of the paper, but we assure you we are doing everything we can to get this money to you as promptly as possible."

On the issue of agency, defendant in error, over the objection of the plaintiff in error that the correspondence alone must determine the question of agency, and that the secret undisclosed state of mind of the witness was irrelevant, propounded to the president of the Colorado Bank the question as here shown, with the answer made thereto: "I will ask you to state whether or not it is true that you were relying on the Ft. Worth Savings Bank & Trust Company to collect this money from Mr. Childers? I should like you to answer that yes or no? Were you relying upon the Ft. Worth Savings Bank & Trust Company to collect the money from Childers? A. We were." In connection therewith plaintiff in error sought to show by said witness on cross-examination, but was not permitted to do so, what the witness meant by the answer given to the question above quoted, and to further show that he was not relying on the Ft. Worth Bank to collect the money as the agent of the Colorado Bank, but assumed it would be so collected as the representative of Childers, and to show, further, that the notes were held by plaintiff in error in Colorado in order that there could be no payment till the money was received in Colorado.

The evidence of Childers, in addition to the sending of the money to the Ft. Worth Bank, as before shown, was, to the effect that he lived in La Salle county at the time of the execution of the notes and at the time of the purported payment thereof; that it was, according to his undersanding, usual for cattlemen, who shipped cattle to market, owing notes such as the notes in question owed by him, not to appear in person at the bank at the time payment was made, and that he was not given notice that the notes in question had been sold by the Ft. Worth Bank to the Colorado Bank.

The president of the Colorado Bank further testified: "That as to the custom referred to by Childers, in his evidence, in the matter of not appearing at the bank when payment of notes was made, according to his information, the usual way was that when a man pays his note, he comes to the bank and takes it up and gets it canceled; that he had no knowledge of any such custom as testified to by Childers; that he knew that Childers lived in La Salle county; that cattlemen in Texas, who borrowed money from Ft. Worth banks and resided in another county, shipped cattle to market and had their drafts sent to the Ft. Worth banks, and knew that they frequently did this, if it was their own bank."

Defendant in error introduced in evidence certain correspondence that passed between the Ft. Worth Bank and Childers, in reference to the payment of the notes. This evidence was objected to by plaintiff in error, upon the ground that the letters were irrelevant and immaterial, as to the case between the plaintiff and defendant Childers; that the offered correspondence was hearsay, res inter alios acta, and inadmissible.

June 5, 1915, the Ft. Worth Bank wrote Childers: "Your two notes ag-

gregating $9,368.00 mature with us on the 21st of this month. We will very much appreciate it if you will make your arrangements to retire these notes at their maturity, as we are using every effort to liquidate our paper as it matures. Please let us hear from you in regard to this paper." June 24, 1915, that bank wired Childers thus: "When do you expect to ship cattle to take up your paper due twenty-first? Answer." That bank June 24th, again wrote Childers: "We wired you at Cotulla today to know when you expected to ship your cattle to take up your paper due the 21st of this month. We received a service on our message stating that you were en route from Denver and expected next week. We think, Mr. Childers, if you are going to let this paper run past due, you should have advised us about it so that we might have known what to expect. Please advise us on receipt of this letter when we may expect payment of these notes." July 5th, Childers wrote the Ft. Worth Bank: "I have just returned from Mexico and did not receive your message and rec'd your letter last night. I shipped five cars steers to St. Louis and will have proceeds sent to your bank to be credited on my account or rather my note that is past due. I will ship again at once and will take up my indebtedness with next shipment. I am sorry that this delay occurred." July 12th, the Ft. Worth Bank wrote Childers: "We are this morning in receipt of three remittances from Cassidy-Southwestern, St. Louis for your account aggregating $5,485.81 to apply on your notes due June 25th for $9,368.00."

The court below ruled that as a matter of law there had been a payment by Childers of the notes sued on, and peremptorily directed a verdict in his favor, as between him and the plaintiff in error, also directing a verdict in favor of the plaintiff in error against the Ft. Worth Bank for the full amount of the balance due on the notes.

Geo. Thompson and J. H. Barwise, Jr., both of Ft. Worth, Tex., for plaintiff in error.

David B. Trammell, R. W. Flournoy, Morgan Bryan, and B. B. Stone, all of Ft. Worth, Tex., and Thomas C. Hall, of Temple, Tex., for defendant in error.

Before PARDEE and WALKER, Circuit Judges, and FOSTER, District Judge.

PARDEE, Circuit Judge (after stating the facts as above). [1, 2] The mere fact that the notes sued on were by their terms made payable at the Ft. Worth Bank did not have the effect of making that bank the collecting agent of the Colorado bank to which they were indorsed and transferred before maturity. But when taken in connection with the facts that the defendant Childers had not been notified of the transfer and was in entire ignorance of the same; that the Colorado Bank had from the Ft. Worth Bank a special guaranty of payment and waiver of protest of the said notes; that there was a chattel mortgage from Childers in favor of the Ft. Worth Bank to secure the payment of the said notes; and that the defendant Childers was, at the demand of the Ft. Worth Bank and without knowledge of the transfer, engaged in selling the cattle covered by the mortgage for the purpose of paying the Ft. Worth Bank the proceeds to be applied on the said notes, of all of which the Colorado Bank had notice, and the other circumstances developed in the written and oral evidence—there was a strong presumption that Childers had a right to believe that in the matter of collecting from him (Childers) the Ft. Worth Bank was the agent of the Colorado Bank. Such presumption was not one of law, but of fact, and not warranting a directed verdict.

We do not find that there was reversible error in the rulings on admissibility of evidence, and on another trial the same questions may not arise.

As we find the court erred in directing a verdict the judgment of the district court is reversed, and a new trial ordered.

WALKER, Circuit Judge (dissenting in part). I concur in the conclusions stated in the first and last sentences of the foregoing opinion, but not in the other rulings expressed therein. The following statement indicates wherein my conclusions on the questions presented for decision are at variance with those stated in the foregoing opinion:

The notes being negotiable paper, the maker cannot sustain a claim that a payment by him to the original payee of part of the amount called for constituted a payment on the notes without showing that the payee, at the time such payment was made, was either the holder of the notes or the agent of the holder to receive payment for the latter. Adams v. Hackensack Improvement Commission, 44 N. J. Law, 638, 43 Am. Rep. 406; Smith v. Kidd, 68 N. Y. 130, 23 Am. Rep. 157; Bartel v. Brown, 104 Wis. 493, 80 N. W. 801. Proof that the Colorado Bank was the owner and holder of the notes, having acquired them for value before maturity, cast on the maker, the defendant Childers, the burden of proving that the Ft. Worth Bank, to which he made a payment without inquiry as to the whereabouts of the notes, which in fact then were in the possession of the owner, was authorized to receive payment for the latter. The nature of his obligations bound him to take notice of the fact that the notes were liable to turn up at maturity in the hands of a party other than the payee. Hoffmaster v. Black, 78 Ohio St. 1, 84 N. E. 423, 125 Am. St. Rep. 679, 21 L. R. A. (N. S.) 52, 14 Ann. Cas. 877; 3 R. C. L., § 521, p. 1288. The holder of the notes is not bound by a payment made by the maker to one not in possession of them nor authorized to collect them.

Nothing in the correspondence between the Colorado Bank and the original payee of the notes supports the claim that the former made the latter its agent to receive payment for it. By its letters the Colorado Bank made it known to the original payee, which had made itself also a guarantor, that the forthcoming of the amount as called for by the notes was expected and insisted on. The letters were in the nature of requests or demands of payment addressed by a creditor to one of the two parties whose relation to it was that of debtors. Nothing said by the creditor to the debtor addressed manifested a willingness of the former for the latter to be its agent to collect from the other debtor, the maker of the notes. It was immaterial to the holder whether the demanded payment was made by the maker of the notes or by the indorsing bank which had guaranteed the payment of them at maturity. The communications were such as might be expected from one in the situation of the Colorado Bank, in the absence of any intention on its part to make its debtor, the guarantor, its collecting agent. The holder did not by any of its letters confer on the original payee actual authority to act as agent in collecting from the maker. Nor was the payee by a redelivery of the notes to it clothed with apparent authority to collect the amount they called for. Childers was under no obligation to

make payment to a bank not having possession of the notes, though that bank was the original payee. He acted at his peril in making a payment without demanding production of the notes or ascertaining who held them.

The dealings between the two banks in regard to the payment of the notes was exclusively by correspondence. That correspondence is the only proper evidence of those dealings. The objection made to evidence of the undisclosed intention or purpose of the official of the Colorado Bank who wrote its letters to the Ft. Worth Bank should have been sustained. Henry v. Lane, 128 Fed. 243, 62 C. C. A. 625.

The Colorado Bank did not estop itself to deny that the original payee was its agent to collect from Childers. It is not made to appear that Childers knew what passed between the two banks. He could not have relied to his prejudice on conduct of which he was in ignorance. Besides, the Colorado Bank did not do, or omit to do, anything calculated to lead the maker of the notes to believe that he could discharge his liability by paying to one who was not the holder of the notes and who was without authority from the holder to collect them. In the circumstances disclosed the Colorado Bank's continued retention of the notes was enough to protect it from being prejudiced by a payment made by the maker to one not in possession of the notes and not clothed by the holder of them with either real or apparent authority to accept payment for the latter.