ROBERTSON et al. v. ALLEN.

(Circuit Court of Appeals, Fifth Circuit. Feb. 7, 1911.)

No. 2,104.

1. BROKERS (§ 49*)—CONTRACTS—CONDITIONS.

A contract with certain brokers provided that the owner of the land in question would convey the same to the brokers or their nominee within six months on certain conditions at $6.50 an acre, in which case there should be no commissions; that the brokers might sell the land to any responsible party or person at any price above $6.50 per acre, and retain the excess, or that they might sell within the time to a willing purchaser for $6.50 per acre, in which case they should receive 2½ per cent. commission. *Held* that, in case of a sale under such contract, the brokers were the agents of the owner, and were bound by the conditions contained in the option part of the contract.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 49.*]

2. BROKERS (§ 94*)—AUTHORITY—CONTRACT TO SELL AND CONVEY.

Where brokers were authorized to purchase and sell land at a specified price under certain conditions, or to find a purchaser, they had no power to bind their principal by a contract to sell and convey.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 136; Dec. Dig. § 94.*]

3. BROKERS (§ 54*) — SALE OF LAND — PROCURING PURCHASER — PECUNIARY ABILITY.

Commissions are not earned by a broker by his procuring a purchaser who is irresponsible and insolvent.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 75–81; Dec. Dig. § 54.*]

4. BROKERS (§ 49*)—CONTRACT—VALIDITY—VIOLATION OF INSTRUCTIONS.

Where brokers in executing a contract for the sale of land did not follow their instructions contained in an option contract between themselves and the owner, and also contracted with the purchaser for an interest in addition to their commissions, without the knowledge of the principal, the contract was void.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 70–72; Dec. Dig. § 49.*]

Appeal from the Circuit Court of the United States for the Northern District of Texas.

Suit by A. B. Robertson and others against Sidney P. Allen to cancel a contract for the sale of land. Judgment for defendant, and plaintiffs appeal. Reversed and remanded, with instructions.

This suit was instituted by the appellants, complainants below, to cancel an alleged contract of sale of lands executed by Trammell & McCauley, purporting to act as agents of complainants, with the defendant.

The bill, after jurisdictional and ownership averments, contains among others not necessary to recapitulate the following averments:

"Third.

"Thomas Trammell and R. L. McCaulley are residents and citizens of Nolan county, Tex., and at the times hereinafter mentioned were assuming to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

act as real estate brokers in buying and selling lands belonging to others for hire, and lying in the state of Texas, and have also been engaged in speculating in lands in the state of Texas upon their own account. Heretofore, to wit, on September 29, 1906, your orators, acting by and through A. B. Robertson, made and entered into a written contract with the said Thomas Trammell and R. L. McCaulley, which said written contract is substantially as follows, to wit:

" 'This agreement made and entered into this the 29th day of September, 1906, by and between Winfield Scott, of Fort Worth, Texas, and A. B. Robertson, of Colorado, Texas, parties of the first part, and Thomas Trammell and R. L. McCaulley, of Sweetwater, Texas, parties of the second part, witnesseth: That, whereas the parties of the first part are owners in fee simple of certain lands located in Lubbock, Lynn, Crosby, and Garza counties, state of Texas, known as the Scott & Robertson pasture, and further designated by list attached hereto, giving numbers of sections, etc., of above lands:

" 'Now, therefore, the said parties of the first part hereby agree to sell to said Trammell & McCaulley, or their nominees, the above-mentioned lands at the price of $6.50 per acre, one-fourth (¼) to be paid in cash upon the furnishing by said parties of the first part of a good deed, with proper abstract showing good title, balance of the purchase to be paid in 1, 2, and 3 annual payments to be secured by vendor's lien retained in the deed, and to draw interest at the rate of six per cent. (6%) per annum from date of notes, all interest on such deferred payments to be paid annually, and said notes for deferred payments to be made "on or before" maturity.

" 'Said parties of the first part further agree that they will release from the vendor's lien retained to secure the deferred payments any part of the above land upon the payment to them of the proportionate part due on the land to be released. The parties of the first part further agree to furnish abstract showing good and legal title to above property.

" 'It is agreed and understood by both parties that said Trammell & McCaulley are to have six (6) months time from the date of this agreement in which to dispose of this property, it being the purpose and intention of this agreement to give said parties of the second part an option on this land for a period of six months from the date hereof. It is further agreed and understood that said Trammell & McCaulley may sell said property at any price in excess of $6.50 per acre, and that such excess shall belong to said Trammell & McCaulley, and said parties of the first part hereby agree to make deed at the price furnished them by said Trammell & McCaulley.

" 'It is also agreed and understood by both parties hereto that said parties of the first part are to have the use of the said pasture and water thereon a necessary length of time in which to dispose of their cattle and that they are to pay to the purchasers of said land a reasonable or customary price as rental therefor.

" 'The above provision need not apply to lands situated on the plains except by agreement hereafter. In the event that the parties of the second part desire to sell, or do sell, some of this land for farming purposes, same is to be fenced off and not considered in the land leased.

" 'The parties of the second part hereby agreeing that they will devote effort and time, and by advertisement and personal work do all they can to effect a sale within the period designated.

" 'This contract is executed in triplicate.

" '[Signed]      Scott & Robertson,
             " 'Parties of the First Part.
" 'R. L. McCaulley, Thos. Trammell,
             " 'Parties of the Second Part.'

"And upon said day and date your orators, acting by and through A. B. Robertson, made and entered into the further contract in writing with the said Thomas Trammell and R. L. McCaulley, which is, in substance, as follows, to wit: 'Whereas, we did, on the 29th day of September, 1906, enter into a contract with Thomas Trammell and R. L. McCaulley for the sale of certain lands located in Lubbock, Lynn, Crosby, and Garza counties, Texas, we hereby agree to pay to said Trammell & McCaulley a commission of two

and one-half per cent. (2½) on said price of $6.50 in case a sale is effected by said parties within the time specified in said agreement or any extension thereof.' Thereafter, and up to and including the 22d day of March, 1907, the said Thomas Trammell and R. L. McCaulley had not exercised their option to' purchase said lands hereinabove mentioned, in accordance with their said option contract, and had not procured for your orators a sale of said lands, and upon the 22d day of March, 1907, Thomas Trammell, acting for said Trammell & McCaulley, from Dallas, Texas, sent to your orator, A. B. Robertson, a telegram, which was on said day received by your orator, A. B. Robertson, and which is in substance, as follows, to wit:

"'Dallas, Texas, March 22, 1907.

"'A. B. Robertson, Metropolitan Hotel, Fort Worth.

"'If you can extend time on land leave letter Metropolitan Hotel; we would like to have thirty days.                    Thomas Trammell.'

"And thereby the said Thomas Trammell meant if your orator would extend the said option contract hereinabove mentioned, and the other contract hereinabove copied on the land herein in controversy, for him to leave letter for Thomas Trammell at the Metropolitan Hotel, in Fort Worth, Texas, so showing, and thereby the said Thomas Trammell asked for a 30 days' extension of the said two contracts. Upon receipt of the said telegram herein mentioned, your orator A. B. Robertson replied thereto, and declined to extend the time of said contract as requested by the said Thomas Trammell.

"Fourth.

"Thereupon, as your orators charge on information and belief, the said Thomas Trammell and R. L. McCaulley entered into a conspiracy and collusion with the defendant herein to cloud the title of your orators to the lands hereinbefore mentioned, and. after being advised by your orator A. B. Robertson that your orators refused to extend the said contracts hereinbefore noted for 30 days as requested by them, or for any other time, the said Thomas Trammell went immediately to Kansas City, where he met the said R. L. McCaulley and the defendant Allen, and thereupon the said defendant Allen and the said Thomas Trammell and the said R. L. McCaulley entered into a conspiracy and collusion to cloud the title of your orators to the lands herein mentioned, and to that end the said Thomas Trammell drew a check for $1,000 upon the banking house of Thomas Trammell & Co., at Sweetwater, Texas, and delivered the same either to the said defendant Allen or to W. A. Rule, and procured in lieu of said check the cashier's check for $1,000 which the said Thomas Trammell delivered to your orator A. B. Robertson, as alleged herein; that the said defendant herein had no interest at all whatever in said money or said cashier's check, but the same was furnished by said Thomas Trammell and said R. L. McCaulley. And thereupon, and in pursuance of such conspiracy and collusion with the said defendant, the said Thomas Trammell and the said R. L. McCaulley, purporting to act for your orators, entered into a contract in writing with the defendant, which is substantially as follows, to wit:

"'This agreement, made and entered into on this the 22d day of March, 1907, by and between Thomas Trammell and R. L. McCaulley of Sweetwater, Texas, as agents for A. B. Robertson of Colorado, Texas, and Winfield Scott, of Fort Worth, Texas, parties of the first'part, and Sidney P. Allen, of Kansas City, Jackson county, Missouri, party of the second part, witnesseth: That, whereas, Thomas Trammell and R. L. McCaulley made and entered into contract .with A. B. Robertson and Winfield Scott on the 29th day of September, 1906, whereby the said R. L. McCaulley and Thomas Trammell did secure a 'contract from the said Scott and Robertson for the sale of certain lands located in the counties of Lubbock, Lynn, Crosby and Garza, state of Texas, said contract being and providing as follows:

"' "'This agreement, made and entered into this the 29th day of September, 1906, by and between Winfield Scott, of Fort Worth, Texas, and A. B. Robertson of Colorado, Texas, parties of the first part, and Thomas Trammell and R. L. McCaulley, of Sweetwater, Texas, parties of the second part, witnesseth: That, whereas, the parties of the first part are owners in fee simple of certain lands located in Lubbock, Lynn, Crosby, and Garza counties, Texas,

known as the Scott & Robertson pasture, and further designated by list attached hereto, giving numbers of sections, etc., of above lands. Now, therefore, the said parties of the first part hereby agree to sell to said Trammell & McCaulley, or their nominees, the above-mentioned lands at the price of $6.50 per acre, one-fourth (¼) to be paid in cash upon the furnishing by said parties of the first part of a good deed, with proper abstract showing good title balance of the purchase to be paid in 1, 2, and 3 annual payments to be secured by vendor's lien retained in the deed, and to draw interest at the rate of six per cent. (6%) per annum from date of notes, all interest on such deferred payments to be paid annually, and said notes for deferred payments to be made, 'on or before,' maturity. Said parties of the first part further agree that they will release from the vendor's lien retained to secure the deferred payments any part of the above land upon the payment to them of the proportionate part due on the land to be released. The parties of the first part further agree to furnish abstract showing good and legal title to above property. It is agreed and understood by both parties that said Trammell & McCaulley are to have six (6) months' time from the date of this agreement in which to dispose of this property, it being the purpose and intention of this agreement to give said parties of the second part an option on this land for a period of six months from the date hereof. It is further agreed and understood that said Trammell & McCaulley may sell said property at any price in excess of $6.50 per acre, and that such excess shall belong to said Trammell & McCaulley, and said parties of the first part hereby agree to make deed at the price furnished them by said Trammell & McCaulley. It is also agreed and understood by both parties hereto that said parties of the first part are to have the use of the said pasture and grass and water thereon a necessary length of time in which to dispose of their cattle, and they are to pay to the purchasers of said land a reasonable or customary price as rental therefor. The above provision need not apply to lands situated on the plains except by agreement hereafter. In the event that the parties of the second part desire to sell, or do sell, some of this land for farming purposes, same is to be fenced off and not considered in the land leased. The parties of the second part hereby agreeing that they will devote effort and time, and by advertisement and personal work do all they can to effect a sale within the period designated."

" 'Now, therefore, the said Thomas Trammell and R. L. McCaulley, acting through and by virtue of the above-recited agreement and also as agents therein for the said A. B. Robertson and Winfield Scott, do hereby sell to the said Sidney P. Allen the lands known as the Scott & Robertson lands, located in the above counties, and comprising 60,000 acres, more or less. For a description of the numbers of the sections comprising these lands, as well as the block numbers, etc., reference is hereby made to a plat of said property which is now in the office of the said R. L. McCaulley and Thomas Trammell in Sweetwater, Texas, and reference is also made for further description to the county records of the above-mentioned counties, where the above lands are located, said party of the second part hereby agreeing to accept and pay for said lands in accordance with the provisions and conditions above recited in the agreement heretofore recited. Said Sidney P. Allen agreeing to pay one-fourth of the purchase price at $6.50 per acre, upon the furnishing by the said Scott & Robertson of proper abstracts showing good title and making deed to the property to the said Sidney P. Allen, and the said Sidney P. Allen further agrees to execute vendor's lien notes to be paid in one, two, and three annual payments, said notes to be made payable on or before maturity and draw interest at the rate of 6% per annum from date of notes. All interest on deferred payments to be made annually. It is hereby agreed and understood that, when the said Scott & Robertson shall have furnished abstracts to the above property, said Sidney P. Allen shall have necessary and reasonable time in which to have said abstracts examined, and just as soon as said abstracts can be examined, after same have been furnished, as above provided, said party of the second part using reasonable diligence in causing said abstracts to be examined, and passed on, that he will then make payment of balance of the cash payment and execute notes as above provided. Said Sidney P. Allen paying the parties of the first

part upon the execution of this contract, the sum of one thousand dollars ($1,000), which said sum is to be deducted from the cash payment by him. In case the abstracts do not show, and cannot be made to show, good title to the property, then in that event the said one thousand dollars ($1,000) is to be returned to the said Sidney P. Allen.

" 'This contract is executed in triplicate.

" '[Signed]          Scott & Robertson,

" 'Parties of the First Part.

" 'By Trammell & McCaulley.

" 'Sidney P. Allen,

" 'Party of the Second Part.'

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Sixteenth.

"Heretofore, and subsequent to the execution of the pretended contract by the defendant and said Thomas Trammell and R. L. McCaulley, assuming to act as the agents of your orators, the defendant and said Trammell & McCaulley, acting together, in pursuance of their collusion and conspiracy, caused the said contracts to be registered in each of the counties wherein said lands of your orators lie, to wit, the counties of Crosby, Lubbock, Lynn, and Garza, and thereby have cast a cloud upon the title of your orators, which cannot be removed without the aid of a court of equity, for that the introduction of parol testimony is necessary to show the want of authority in the said Trammell & McCaulley to execute said contracts as agents for your orators, which said want of authority is not apparent upon the face of said contract, and thereby the title of your orators to said lands being so clouded, your orators are hindered and embarrassed in the sale and possession thereof.

"Wherefore, for as much as your orators are remediless by the strict rules of the common law, and can only be relieved in a court of equity, your orators have brought this, their suit, and pray, the defendant having already been cited herein and having herein entered his voluntary appearance, that he be required to answer this bill, but not under oath (answer under oath being hereby waived), and that upon trial hereof your orator have judgment against the defendant canceling the said pretended contract executed by him and the said Thomas Trammell and R. L. McCaulley, assuming to act as agents for your orators, and that the cloud upon the title of your orators to the said lands described in this bill be removed, and for such other and further relief, general or specific, as your orators may show themselves to be entitled to in the premises, and as in duty bound your orators will ever pray," etc.

The defendants' answer, aside from general denials and pleas in confession and avoidance, is as follows:

"Defendants say the allegations in paragraph sixteenth of said bill of complaint herein are not true in whole or in part, as said allegations state that the registration in Crosby, Lubbock, Lynn, and Garza counties of the said contract of purchase made by this defendant, as aforesaid, was done in pursuance of a conspiracy and collusion between this defendant and Trammell & McCaulley. Defendant says there was no collusion nor conspiracy of any kind between this defendant and Trammell & McCaulley, or either of them, with reference to said lands or the registration of said contract; but the facts are that this defendant had said contract registered in said counties for the purpose of giving notice to the public of the right of this defendant in and to the lands mentioned in said contract, and for the protection of the rights of this defendant in the lands mentioned in said contract. Defendant admits that want of authority in Trammell & McCaulley to execute said contract as agents for complainants is not apparent upon the face of said contract, and defendant denies that there was any want of authority in said Trammell & McCaulley to so execute said contract as agents for complainants, but says said authority existed as shown by the written contracts made by complainants through said Trammell & McCaulley, which said contracts are set out substantially in paragraph third of complainants' bill herein.

"Defendant says he made the contract for the purchase of said lands mentioned in the bill of complaint herein, as aforesaid, in the utmost good faith

and with the purpose of carrying out and performing said contract, but complainants have refused to carry out any part of said contract to be by them performed, and have breached, and, inasmuch as this defendant on breach of said contract by complainants had a right to elect whether he would seek a specific performance of said contract or would seek a recovery from complainants for damages sustained by him by the breach of said contract by complainants, this defendant has elected to seek a recovery from complainants for his damages by reason of a breach of said contract, and to that end this defendant has instituted his suit for damages in the Circuit Court of the United States for the Northern District of Texas, at Abilene, which court has jurisdiction of said suit both as to parties and to subject-matter, and for that reason, and for the reason that defendant's suit against complainants for his said damages is an action at law and not cognizable in this court in this case, this defendant does not put at issue herein his rights under said contract, but expressly reserves same for assertion in his aforesaid action at law, and answers herein only as to the issue tendered herein by complainants, the validity of the contract of purchase made by defendant with complainants."

After much evidence and on hearing before the Circuit Court, the complainants' bill was dismissed, with costs, and the complainants sued out this appeal.

Edward J. Hamner, I. W. Stephens, and Geo. E. Miller, for appellants.

A. H. Kirby, M. A. Spoonts, Geo. Thompson, and J. H. Barwise, Jr., for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts as above). The two writings made between Scott & Robertson for the one part and Trammell & McCauley for the second part on the 29th day of September, 1906, constitute the agreements between the parties. No present consideration is alleged or shown. Specifying and analyzing these agreements, we find: That Trammell & McCauley were given a right to purchase the land in question for themselves or their nominee at any time within six months at the price of $6.50 per acre, in which case there were to be no commissions. This might have ripened into a binding contract if accepted within six months. (2) That at any time within six months Trammell & McCauley had a right to sell the land to any responsible person at any price above $6.50 per acre, in which case the excess over $6.50 was to belong to Trammell & McCauley. Such a sale is not claimed. (3) That Trammell & McCauley might sell the land at any time within the six months to any willing purchaser at $6.50 per acre, in which case Trammell & McCauley were to receive as commissions 2½ per cent. on the amount of sale. In case of sale under this provision, Trammell & McCauley were the brokers and agents of Scott & Robertson for the sale of the land, their instructions being the conditions offered to Trammell & McCauley in the option part of the contract. In the matter of such sale, said Trammell & McCauley were interested only to the extent of their commissions. The record shows that, under this provision and treating the aforesaid agreement as a full and regular power of attorney, Trammell & McCauley entered into an agreement in the name of Scott & Robertson with the defendant Allen, who was insolvent, if not bankrupt, and who had never seen the land or had it described to him by

any person who had seen or was acquainted with the same, for the sale to said Allen of a tract of 60,000 acres, worth in the aggregate at least $400,000, the said Allen agreeing to accept and pay for said lands in accordance with the provisions and conditions recited in the option given by Scott & Robertson to Trammell & McCauley, but additionally providing that:

"When the said Scott & Robertson shall have furnished abstracts to the above property that said Sidney P. Allen shall have necessary and reasonable time in which to have said abstracts examined, and, just as soon as said abstracts can be examined, after same have been furnished as above provided, said party of the second part, using reasonable diligence in causing said abstracts to be examined and passed on, that he will make payment," etc.

And it further provided that:

"Said Sidney P. Allen paying the parties of the first part upon the execution of this contract the sum of one thousand ($1,000.00) dollars, which said sum is to be deducted from the cash payment by him," and "in case the abstracts do not show and cannot be made to show good title to the property, then the said one thousand ($1,000.00) dollars to be returned to the said Sidney P. Allen."

In the agreement between Scott & Robertson and Trammell & McCauley there was a stipulation that the parties of the first part were to have the use of pasture, grass, and water, in which to dispose of their cattle, and for which they were to pay a reasonable, customary rental, but reserving the application of said provision to lands situated on the plains, except by agreement thereafter made, and providing in the case of sale or resale of some of this land for farming purposes the same shall be fenced off and not considered in the lease, so that it may be said that the alleged contract made by Trammell & McCauley for Scott & Robertson was not in strict accordance with, but differed in certain respects from, the power claimed to have been given by Scott & Robertson to Trammell & McCauley. And it further appears from the evidence of Allen that Trammell & McCauley were to have an interest of 25 cents per acre in the land sold, and this was not communicated to Scott & Robertson. When the agreement with Allen was communicated to Robertson by wire on the 24th day of March and in person by Trammell on the 29th day of March, 1907, the said Robertson refused to ratify or confirm the same, declaring it was absolutely void for the want of authority on the part of Trammell & McCauley to execute the same. At the same time the said Scott & Robertson, expressing themselves willing to sell said land for the price and under the terms mentioned in the option contract, offered to enter into and execute a contract with any purchaser who would properly and reasonably protect their interests, and with the alleged consent of Trammell negotiations were at once entered upon to bring about such sale with defendant Allen; and thereupon the cashier's check for the sum of $1,000, said to have been accepted by Trammell from Allen, was deposited with Robertson, with the understanding, as Robertson claims, as a guaranty that said cashier's check for $1,000 so deposited with Robertson should apply as a part of the purchase money in case of sale to Allen, and, in case such sale failed, then to be applied to reimburse Scott & Robertson for expenses in preparing for the execu-

tion of said contract, procuring abstracts of title, and other expenses, etc. The negotiations under the new contract of sale to Allen failed possibly from the fact that Scott & Robertson insisted on several stipulations not mentioned in the original contract, such as that notes for deferred payments should be made payable at the Colorado National Bank, Colorado, Tex., and should provide for 10 per cent. attorney's fees in event of nonpayment; that the contract should contain a provision with regard to resale of part and fencing the same, and in regard to pasture and grazing during the time necessary to dispose of their cattle, not to exceed two years, and other minor provisions not necessary to specify. Thereupon, after some correspondence, Trammell & McCauley and Allen caused the agreement made between Trammell & McCauley, acting as agents of Scott & Robertson, to be registered in the several counties in Texas, where the lands were situated, and hence this suit alleging conspiracy to remove cloud from title.

The bill charges conspiracy between Trammell & McCauley and Allen and many other allegations of fact, making a case, if true, for complainants' relief. The answer denies generally and specifically; asserts the authority of Trammell & McCauley as brokers and agents of Scott & Robertson to make the contract and sale in question; avers good faith; alleges that complainants have refused to carry out any part of the contract of sale and have breached the same; that defendant had a right to elect whether he would seek specific performance or a recovery of damages by reason of the breach, and that the defendant has elected to seek a recovery from said complainants for his damages, and to this end has instituted a suit at law for damages in the Circuit Court of the United States for the Northern District of Texas, and for that reason does not put at issue herein his right for damages, but expressly reserves the same for assertion in said action at law, and answers herein only as to the issue tendered by complainants, to wit, the validity of the contract of purchase.

Trammell & McCauley had no power of attorney from Scott & Robertson, but they were, as charged in the bill and admitted in the answer, brokers and agents to sell the land in question. Their instructions, if any, were found in the option part of the contract. On principle and authority they had no right or power to bind their principals by a contract to sell and convey. 3 Wait, Actions & Defenses, 286, 287.

Hamer v. Sharp, L. R. 19 Eq. 108, on the following written instructions:

"I request you to procure a purchaser for the following freehold property, and to insert particulars of the same in your Monthly Estate Circular till further notice, viz., my beer house and shop, No. 4 and No. 6, Manchester Road. Tenant, No. 4, William Galloway, gilder; and No. 6, Albert Vaults, Henry Holmes, beer retailer, and work-rooms above. Present net rent, £150; price £2,800, when I will pay you a commission and expenses of fifty pounds. About six years' lease unexpired.                                [Signed]   J. Sharp."

And the court in a well-considered opinion:

"Held that the estate agent had no authority to enter into an open contract for sale, and, semble, that he had no authority to enter into any contract for sale."

In Halsey v. Monteiro, 92 Va. 581, 24 S. E. 258, the Supreme Court of Virginia decides:

"A real estate broker or agent is defined to be one who negotiates the sale of real property. His business generally is only to find a purchaser who is willing to buy the land upon the terms fixed by the power. He has no authority to bind his principal by signing a contract of sale. A sale of real estate involves the adjustment of many matters besides fixing the price. The delivery of the possession has to be settled, generally, the titles to be examined, and the conveyance, with its covenants, to be agreed upon and executed by the owner—all of which require conference and time for their completion. They are for the determination of the owner, and do not pertain to the duties, and are not within the authority, of a real estate agent. For obvious reasons, therefore, the law wisely withholds from him any implied authority to sign a contract of sale in behalf of his principal. 3 Wait, Act. & Def. 286, 287; Davis v. Gordon, 87 Va. 566, 13 S. E. 35; Kramer v. Blair, 88 Va. 456, 13 S. E. 914; Force v. Dutcher, 18 N. J. Eq. 401; Morris v. Ruddy, 20 N. J. Eq. 236; Duffy v. Hobson, 40 Cal. 240 [6 Am. Rep. 617] and Grant v. Ede, 85 Cal. 418, 24 Pac. 890 [20 Am. St. Rep. 237]."

The cases cited all support the text.

In Coleman v. Garrigues, 18 Barb. (N. Y.) 60, 67, the Supreme Court of New York said:

"It is well known that the general agency of brokers in real estate is limited to finding a buyer or borrower who will assent to the terms of the seller or lender, and then bringing the parties together. A lender on mortgage would be astonished to find his broker assuming to sign his name to a contract to loan on real estate; and the borrower would be no less and justly astonished to find that the broker had signed a contract in his name to mortgage his real estate. The owner of real estate who authorizes a broker to sell his land would be surprised to find the broker assuming to sign a contract for the sale; and the buyer would be no less surprised to find his name fixed by a broker to a contract to buy. In dealing in real estate, the authority to sign the contract is never understood to be granted from a mere authority to make a bargain. The proposed purchaser may be very objectionable. He may be one who would erect nuisances to annoy the neighbors, or who would contract to pay cash and then cause delays, which on slight grounds a court of chancery would excuse, and so make the nominal cash payment a long credit; so, too, the borrower on mortgage may be one with whom the lender would be unwilling to have any dealings. For such reasons, the power of the broker is thus practically limited; and he does not exercise, and is not understood to possess, the power to use the name of either of the principals."

Glentworth v. Luther, 21 Barb. (N. Y.) 145, 146, is to the same effect.

In Duffy v. Hobson, 40 Cal. 244, 6 Am. Rep. 617:

"This is the settled construction to put upon the employment of professional brokers 'to sell' or 'to close a bargain,' concerning real estate, and we know of no reason why the same language employed to express the authority of any other agent 'to sell' should have a more extended meaning. Besides, a sale of real estate involves the adjustment on many matters in addition to fixing the price at which the property is to be sold. The deed of conveyance may be one with full covenants of seizin and warranty, or only those covenants imported by the use of the words 'grant, bargain and sell' under our statute, or it may be by quitclaim merely. The vendor may be unwilling to deal with a particular proposed purchaser on any terms. He may consider him pecuniarily unable to comply with the contract, even if the title prove satisfactory, and he may decline to bind himself to convey to such a purchaser at the end of the time necessary to examine the title, because he might thereby in the meantime lose an opportunity to sell to some other person who

might desire to purchase, and in whose good faith and ability to pay he reposed entire confidence. All these and many other like considerations might, and usually do, arise in the mind of the vendor. Now a mere authority 'to sell' can hardly confer power upon the agent to determine all these matters for his principal, so as to bind him by his determination. · And yet, unless the agent do have such power, he cannot make a definitive contract, or one that could be said to have the certainty requisite to deprive the principal of his option to ultimately decline to make the sale. To give to the mere words 'to sell' such a broad signification as that would be to invest the agent with powers of that ample and discretionary character usually only conferred with caution and by means of a general letter of attorney, where the terms are distinctly expressed. While it is true that a power to sign the name of a principal to a contract of sale may be given verbally, we think that the words used for the purpose should be distinct and clear in their meaning and import, and should, with the requisite degree of certainty, manifest the intention of the principal to do something more than merely to employ a broker."

To the same effect are Treat v. De Celis, 41 Cal. 202, and Armstrong v. Lowe, 76 Cal. 616, 18 Pac. 758, in each of which a price and terms were fixed and there was a written power.

Apropos of the subject, see Mechem on Agency, § 966, to the effect that it is incumbent upon a broker to show that the purchaser was produced and was able pecuniarily to complete the purchase; citing McGavock v. Woodlief, 20 How. 221, 15 L. Ed. 884; Iselin v. Griffith, 62 Iowa, 668, 18 N. W. 302; Coleman's Ex'r v. Meade, 13 Bush (Ky.) 358, sustaining the text. Allen, the proposed purchaser, was an irresponsible insolvent, and it is no answer to this phase of the case to say that one Rule was interested with Allen as purchaser; but the evidence shows that Rule was not in much better condition pecuniarily, and, besides, it is shown that Rule was in no wise bound to Scott & Robertson as a purchaser.

Passing this point and assuming for this case that Trammell & McCauley as agents had authority to bind Scott & Robertson by contract of sale, then I think it is clear that they exceeded their power, and therefore Scott & Robertson are not bound. In Henry v. Lane, 128 Fed. 243, 252, 62 C. C. A. 625, in which a sale had been made under a regular power of attorney, this court said and held:

"The power of attorney was the sole measure of the agents' authority. It specified in detail the terms upon which appellant was willing to sell, and. whether wise or unwise, beneficial or prejudicial, they were the terms which appellant chose to name; and Trueheart & Co. and appellee were powerless to change them. It was appellant's land. As the owner he had the right to specify the terms upon which he would sell his own property. No matter how absurd or unreasonable his terms might be, it was, in the very nature of things, his right as owner of the property to fix his own terms, and Lane had either to assent thereto or decline to buy."

And the adjudged cases in Texas and elsewhere settle the proposition that, where the contract of sale made by the agent varies from the authority granted by the principal, the same is void and unenforceable. De Sollar v. Hanscome, 158 U. S. 216, 15 Sup. Ct. 816, 39 L. Ed. 956; Gough v. Coffin (Tex. Civ. App.) 120 S. W. 210; Shirley v. Coffin (Tex. Civ. App.) 121 S. W. 181, and other cases in brief of counsel.

Now in the option part of the agreement it was provided that "one-fourth to be paid in cash upon the furnishing by the parties of the first part of a good deed with proper abstract showing good title," evidently

intending that the option acceptor should determine at once and without delay whether the title was acceptable.

The contract made for Scott & Robertson in detail is as follows:

"It is hereby agreed and understood that, when the said Scott & Robertson shall have furnished abstracts to the above property, said Sidney P. Allen shall have necessary and reasonable time in which to have said abstracts examined, and just as soon as said abstracts can be examined, after same have been furnished, as above provided, said party of the second part using reasonable diligence in causing said abstracts to be examined, and passed on, that he will then make payment of balance of the cash payment and execute notes at the rate of six per cent. (6%) per annum from date of notes, all interest on such deferred payments to be paid annually, and said notes for deferred payments to be made 'on or before' maturity."

Why was this inserted if the option was sufficient? Evidently to give more time than the option contract gave for delay in holding the abstract for examination, to the end that the irresponsible bankrupt purchaser might have time to raise money to purchase land he had never seen nor had even been described to him by any person who ever had seen the land. It is no answer to this that the law would have given the purchaser reasonable time to hold and examine the abstract. The law would only have given time, if upon construction of the option limit it were found that time was therein granted, and it would have left no scope for the delay—as seems to have been carefully provided for in elaborate details set forth in the alleged contract. Again, the option contract provided for the right reserved to pasture after sale, the exact extent of which was to be agreed thereafter, and evidently to be settled with the purchaser before the consummation of the sale. The alleged contract of sale makes no provision in regard to this proposed reservation on the part of the vendor. These are variations from the power on which under Henry v. Lane, supra, and the other cases cited, Scott & Robertson had a right to reject.

And there is another matter developed by the evidence that should entitle Scott & Robertson to relief. Trammell & McCauley, as admitted agents to sell, reserved and retained an interest with the alleged purchaser of 25 cents per acre in the land proposed to be sold, and thus were interested on both sides of the transaction without the knowledge of Scott & Robertson, and this of itself is sufficient to vitiate the alleged sale. The trial judge views it as a suspicious matter requiring Trammell & McCauley's actions to be closely scrutinized, but falling back on the option contract under which Trammell & McCauley were not acting, and although it would allow the agents' commissions from both vendors and vendee, holds it to be immaterial. The authorities are overwhelmingly against such holding. Mechem on Agency, §§ 643, 798. In Armstrong v. O'Brien, 83 Tex. 635, 648, 19 S. W. 268, 274, it is said:

"It is well settled that a person cannot act in the capacity of agent for both the buyer and seller, and receive commissions from both; and from principles of public policy such an agent would not be allowed to recover compensation from either party, unless he should so act with the full knowledge and consent of both principals; and about this exception there is a conflict of authority. It makes no difference that the principal was not in fact injured, or that the agent intended no wrong, or that the other party acted in good faith."

That such conduct of the agent, unless known and assented to by both parties, avoids the contract on principle and on grounds of public policy, see authorities collated. Section 613, Mechem on Agency. So that whether we consider the power of the agents to bind Scott & Robertson in the contract with Allen, or the variations from the power, or the conduct of the agents, the alleged contract was void and unenforceable, and decree should go for complainants.

And it is further manifest that, even if there were any doubt as to the correctness of each and all of the above conclusions, then, considering that Allen has elected to abandon any demand for specific performance, and that the public policy being that no such large tract of land should be and remain for an indefinite period out of commerce, the complainants should have a decree removing cloud from title. We have some doubt as to whether the complainants should be allowed to retain the thousand dollars received by them in the after-negotiations as to the sale of the land.

The decree of the Circuit Court is reversed, and the cause is remanded, with instructions to enter a decree in favor of the complainants substantially as prayed for, with all costs to be taxed, but conditioned that the complainants shall pay into the registry of the court for the use of the defendant the sum of $1,000, with interest from April 1, 1907.