PHILIP I. GLOBERMAN, Respondent, *v.* RICHARD M. LEDERER et al., Doing Business under the Name of REREDEL ASSOCIATES, Appellants.

First Department, December 16, 1952.

*Bernard H. Goldstein* of counsel (*Victor S. Gettner* and *Theodore A. Kaufman* with him on the brief; *Gettner, Simon & Asher,* attorneys), for appellants.

*Myron J. Greene* of counsel (*Bernard Hershkopf* and *Martin Greene* with him on the brief; *Millard & Greene,* attorneys), for respondent.

Van Voorhis, J. Defendants have appealed from a judgment of $15,863.90 for brokerage commissions, for services alleged to have been rendered in procuring a prospective purchaser for real property. The action was brought upon the theory that plaintiff procured a Doctor Weinraub, who was ready, willing and able to buy this real estate at a price and upon terms authorized by appellants, but that no sale occurred due to defendants' fault in raising the price, after the customer had been obtained. No sales contract was signed, but, according to plaintiff, the sale which he arranged would have been closed not later than thirty days after July 27, 1951, viz., by August 26, 1951.

It was stated on the argument that after this action had been commenced, defendants did sell the same property to a corporation owned by Doctor Weinraub and by a man named Feinberg who, Doctor Weinraub testified, would have supplied 25% of the $300,000 cash payment on the purchase price which he unsuccessfully offered to defendants through plaintiff as broker. It was broadly hinted (the record contains nothing more) that defendants' discharge of plaintiff as broker was disingenuous, and that the sale which took place was really to the same inter-

ests that plaintiff had procured. Plaintiff might, without the service of a supplemental complaint, have fortified his cause of action as it was presented at the trial, by showing that Doctor Weinraub soon afterward bought property for the same sum or a larger sum of money by exerting a financial competence which he possessed at the earlier date. Moreover, if what happened was just a maneuver to circumvent plaintiff's right to recover brokerage commissions, he might have moved for leave to serve a supplemental complaint under section 245 of the Civil Practice Act, and applied for an examination before trial in order to elicit evidentiary facts concerning these incidents occurring subsequent to the commencement of the action, and, if the evidence justified it, might have founded his claim to commissions upon a sale of the same property actually consummated to the same purchaser that had been procured by plaintiff.

Such a theory of fact was not pursued, however, and therefore, it would have been error to admit evidence which merely hinted without tending to establish that the actual sale was to the same interests that plaintiff had procured, or which failed to demonstrate the prior necessary financial ability of Dr. Weinraub. The repeated references to such a sale by plaintiff's counsel before the jury were prejudicial. Such evidence should be excluded unless connected up. If it were to have been introduced and connected up, however, such an inquiry might well have gone to the heart of the case. In this category belongs the offer of testimony, that in December, 1951, five months after plaintiff claims to have procured Doctor Weinraub as a prospective buyer, and four months after plaintiff claims that title should have been transferred, Dr. Weinraub invested some cash in a corporation which bought the property. Standing alone, such testimony would have no tendency to establish that the negotiations instituted through plaintiff had not been terminated in good faith prior to the consummation of a sale to the same interests. In conjunction with other evidence, it might have done so. Neither would it have been evidence that Weinraub would have been financially able to pay for the property on or about August 26, 1951, in the absence of evidence that the money which went into the purchase price came from assets which he owned at the earlier date or came from other persons who, at the earlier date, were committed or certain to supply the funds. It is not meant to infer that such commitments would be necessary if a purchaser has assets which could normally be used as collateral on which to borrow a required amount of cash.

What has been said does not signify that plaintiff must fail to recover under the theory upon which the action has been prosecuted. Proceeding on the premise that no sale took place, plaintiff had the burden of proving at the trial that Doctor Weinraub was not only ready and willing, but also financially able to pay the $300,000 in cash which defendants had specified as necessary in order to effectuate a sale (*Schnitzer* v. *Price,* 122 App. Div. 409; *Randell* v. *Ranken Realty Co.,* 188 App. Div. 165; *Rubin* v. *Collins,* 214 App. Div. 161; *Jaffe* v. *Lederer,* 113 Misc. 356, 359). Although Doctor Weinraub testified as a witness, he refused to disclose anything definite about the condition of his personal finances. It was not enough that he stated that he could have bought the property. At least some details had to be shown, from which the jury could have inferred that he possessed the necessary financial ability. He testified that he had bank accounts of $50,000 and that Public National Bank would have loaned him from $150,000 to $175,000 within thirty days from July 24, 1951, which was the date by which he considered that title would have been transferred. Doctor Weinraub also testified that he had expected Mr. Feinberg to pay one quarter of the $300,000 cash, which would have been $75,000. It does not appear that this bank or Feinberg had made any binding commitment to advance these funds. Even if the bank had loaned $175,000, this, added to the $50,000 which he testified that he had on hand, would nevertheless have fallen short by $75,000 of the $300,000 required. This, of course, is the exact amount which he testified that he expected would have been furnished by Feinberg.

In the annotation appearing at 1 A. L. R. 528, the holdings of the cases upon this subject are summarized as follows: " It may be said, in general, that a proposed purchaser is not able, when he is depending upon third parties who are in no way bound to furnish the funds, to make the purchase. *McGavock* v. *Woodlief* (1858) 20 How. (U. S.) 221, 15 L. ed. 884; *Robertson* v. *Allen* (1911) 107 C. C. A. 254, 184 Fed. 372; *Mattingly* v. *Pennie* (1895) 105 Cal. 514, 45 Am. St. Rep. 87, 39 Pac. 200; *Birnbaum* v. *Unger* (1912) 135 N. Y. Supp. 1; *S. V. Thompson Co.* v. *Goldman* (1912) 51 Pa. Super. Ct. 632 ".

Nothing to the contrary was held in *Mengel* v. *Lawrence* (276 App. Div. 180). It is not necessary to follow a particular formula in order to establish financial ability of a prospective purchaser to meet the price, but there must be some tangible evidence from which a jury could conclude that he would have

had the ability.  Some facts must be adduced, beyond the mere conclusion of the prospective purchaser, that he could have performed his obligations in the transaction.  Of course, evidence would have been relevant that at the expected time for closing, funds had been made available to the purchaser from his wife, associates or lending institutions.  When the purchaser was on the witness stand, he was treated too gingerly by the court and counsel on both sides, and as a result the pertinent facts concerning his financial responsibility were not elicited.

The judgment appealed from should be reversed, and a new trial granted, with costs to appellants to abide the event.

PECK, P. J., CALLAHAN and BREITEL, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellants to abide the event.