Keating, J.
This appeal presents a question of first impression: Is a real estate broker entitled to commissions on the sale of real property if the purchaser asserts a statutory privilege to rescind the contract of sale because the property has been substantially destroyed by fire after the contract was executed, but before the buyer took title or possession?
The present action was submitted to the Supreme Court, Westchester County, upon an agreed statement of facts (CPLR 3222). Special Term found the seller liable for the agreed brokerage commissions. The Appellate Division, Second Department, reversed, two Justices dissenting (23 A D 2d 863).
Briefly, the facts submitted were the following: Helen Hecht, plaintiff-appellant, entered into a written contract with Herbert and Joyce Meller, defendants-respondents, by which she became the exclusive selling agent for the sale of their personal residence and an adjacent lot which they wished to sell for $75,000. Through the plaintiff’s efforts suitable buyers were introduced to the Mellers, and on May 30, 1963 a contract for the sale of the property was signed which acknowledged that Mrs. Hecht had brought the parties together, established a sale price of $60,000, and set August 1 as the closing date.
On July 20, without fault of either the vendors or vendees, the dwelling house on the property was substantially destroyed *304 by fire. The buyers elected to rescind the contract, as provided for by statute (Real Property Law, former § 240-a, repealed by General Obligations Law, § 19-101, subd. 7, re-enacted as General Obligations Law, § 5-1311), and the Hellers, therefore, returned the buyers’ down payment. The present action was commenced by the real estate broker when the sellers refused to pay the $3,600 brokerage commission allegedly earned by the broker in bringing the contracting parties together.
The statutory provision applicable to the realty contract under consideration provides that any contract for the purchase and sale of realty shall be interpreted, unless the contract expressly provides otherwise, as including an agreement that the vendor cannot enforce the contract of sale if the property is substantially destroyed and the vendee has taken neither the legal title, nor possession of the property. This section was enacted to alter the common-law rule which, absent any agreement to the contrary, cast the risk of destruction of the property between the time the contract of sale was entered into and passing of title upon the vendee. (See, e.g., Sewell v. Underhill, 197 N. Y. 168; Reife v. Osmers, 252 N. Y. 320, 323-324.) The force of the enactment, however, did not render realty contracts unenforcible but, rather, simply bestowed a privilege on vendees to rescind the contract.
Examination of the legislative history of the Uniform Vendor and. Purchaser Risk Act (General Obligations Law, § 5-1311, subd. 3) discloses no evidence that the Legislature intended to shift the risk of payment of earned brokerage commissions, because of the assertion of a vendee’s privilege, from the seller to a business loss of the broker. Professor Williston, the author of the provision, proposed its promulgation to the Commissioners on Uniform Laws in order to abrogate the injustice caused by the common-law rule which required a vendee to fulfill his contractual obligations even though the property was substantially destroyed and he neither took title nor possession. The announced justification for proposing the provision was the fact that normally a vendee failed to perceive the necessity of insuring the property and thus bore the loss of its destruction (1934 Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings, pp. 202-203, 20A-205; 1935 Handbook, pp. 138-139; 9C Uniform Laws Annotated, *305 Uniform Vendor and Purchase Risk Act, p. 313 [1957]). Our Legislature adopted the model act in 1936, with minor revisions, after the New York Law Revision Commission recommended its enactment. The Law Revision Report stated that the act embodied a “ wise policy of having the party in possession of the property care for it at his own peril ” (1936 Report of N. Y. Law Rev. Comm., pp. 757-780, 760-762, 759). Thus support cannot be gleaned from the section’s legislative history to provide a basis for determining that the enactment was intended by the Legislature to alter a seller’s pre-existing obligation to compensate his broker, who fully performed an independent brokerage agreement.
This court has consistently stated that a real estate broker’s right to commissions attaches when he procures a buyer who meets the requirements established by the seller. (Levy v. Lacey, 22 N Y 2d 271, 274; Wagner v. Derecktor, 306 N. Y. 386, 390; O’Hara v. Bronx Consumer Ice Co., 254 N, Y. 210; Colvin v. Post Mtge. & Land Co., 225 N. Y. 510, 516; Reis Co. v. Zimmerli, 224 N. Y. 351, 353; Davidson v. Stocky, 202 N. Y. 423 ; Smith v. Peyrot, 201 N. Y. 210, 214; Older v. Davis, 137 N. Y. 504.) At the juncture that the broker produces an acceptable buyer he has fully performed his part of the agreement with the vendor and his right to commission becomes enforcible. The broker’s ultimate right to compensation has never been held to be dependent upon the performance of the realty contract or the receipt by the seller of the selling price unless the brokerage agreement with the vendor specifically so conditioned payment. (See, e.g., Levy v. Lacey, supra, p. 274.) As we stated in Older v. Davis (supra, p. 506): “If from a defect in the title of the vendor, or from a refusal to consummate the contract on the part of the purchaser for any reason, in no way attributable to the broker the sale falls through, nevertheless the broker is entitled to his commissions, for the simple reason that he has performed his contract.”
Since the vendee may elect to fully perform the contract even though the contingency contemplated by' the statute has occurred, it would be an unwarranted construction of the section to find that it gave a seller a privilege not to compensate his broker. This necessarily follows in light of our precedents and the factors present in those circumstances where a vendee *306 elects not to perform. At the time the contract is rescinded the broker and the seller are equally blameless. When it is realized that the seller has the contractual flexibility to allocate the possible risk of having to pay the brokerage commission, it creates no inequity to apply our consistently announced rule. The vendor can protect against the risk by either conditioning the brokerage contract, so that commissions would only be paid out of the proceeds of the sale, or contracting with the vendee that he would either have to purchase the property irrespective of its condition on the closing date or pay the broker’s earned commission if he elected to rescind the contract.
In determining the extent to which the duties of sellers and brokers should' be realigned, we must consider the fact that, simply because the contingency provided for by the statute arises, that is in no way determinative of the actual desire of the vendee to fully perform. Also, simply because a vendee elects to rescind the contract in no way reflects on the inadequacy of the broker’s performance in finding an acceptable buyer.
Even though the property is destroyed, performance of the contract may in some instances still be advantageous to the vendee. The vendee might choosé to perform because the contract permits an abatement in the purchase price (Burack v. Chase Manhattan Bank, 9 A D 2d 914, affd. 10 N Y 2d 879; Rizzo v. Landmark Realty Corp., 277 App. Div. 1094; World Exhibit Corp. v. City Bank Farmers Trust Co., 186 Misc. 420, affd. 270 App. Div. 654), or requires insurance proceeds received by the vendor to be credited toward the purchase price of the property. Insurance proceeds will be credited if either the vendee contracts with the vendor for him to insure the property or the vendee pays the premiums for the vendor (Raplee v. Piper, 3 N Y 2d 179).
These factors plus the contemplated use of the property will influence the vendee’s ultimate decision whether to proceed with the contract. Thus, even though the contingency foreseen by the statute has occurred, the possibility that the buyer will opt out of the contract is even more remote. Neither the section’s legislative history nor its language support a privilege to the seller not to pay an earned brokerage commission. The fact that our decisions decided before and after the enactment of the section have consistently held that a broker is entitled *307 to commissions when he brings the parties together compels a finding in this case that the expense of the brokerage commission must be paid by the vendor who has contracted for the broker’s services, even though the Legislature has given the vendee the privilege of rescinding the contract which the broker helped bring about. The sellers in this case, having failed to shift the possible loss, must be deemed to have assumed the risk themselves.
The order of the Appellate Division should be reversed and the judgment of Special Term reinstated, with costs.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Breitel and Jasen concur.
Order reversed, etc.