STIEFVATER REAL ESTATE, INC.,
Plaintiff-Appellant,

v.

James G. HINSDALE and Elizabeth M.
Hinsdale, Defendants-Appellees.

No. 215, Docket 86–7551.

United States Court of Appeals,
Second Circuit.

Argued Oct. 22, 1986.

Decided Feb. 27, 1987.

Neal Schwarzfeld, New York City (Schwarzfeld, Ganfer & Shore, New York City, of counsel), for plaintiff-appellant.

Terrence E. Flynn, Chicago, Ill. (Gessler, Wexler, Flynn, Laswell & Fleischmann, Ltd., Chicago, Ill., Eileen B. Eglin, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, of counsel), for defendants-appellees.

Before KAUFMAN, NEWMAN, and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

This action by plaintiff Stiefvater Real Estate, Inc. ("Stiefvater"), to recover a $15,900 brokerage commission fee for having produced a purchaser for the house of defendants James G. and Elizabeth M. Hinsdale ("Hinsdale"), was commenced in New York state court and removed by Hinsdale on the basis of diversity of citizenship to the United States District Court for the Southern District of New York. The district judge, Hon. Lloyd F. MacMahon, treating Hinsdale's motion to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) as one for summary judgment under Fed. R.Civ.P. 56, not only granted the motion but, having found Stiefvater's claim to be "frivolous", granted Hinsdale's request for attorney's fees under Fed.R.Civ.P. 11.

A review of the record on appeal demonstrates that the district court misperceived this case as turning upon whether the contract between Hinsdale, as seller, and the purchaser procured by Stiefvater had been lawfully cancelled by Hinsdale. Under that misperception the district court concluded that because Hinsdale rightfully cancelled the contract of sale, Stiefvater was not entitled to collect its commission. The critical issue under New York law, however, is whether Stiefvater produced a purchaser ready, willing, and able to buy on terms agreeable to Hinsdale.

There is no issue as to the purchaser's readiness and willingness to buy; whether the purchaser was financially able to consummate the transaction is in sharp controversy and presents a genuine issue of material fact properly to be determined at trial. Accordingly, we reverse and remand for further proceedings.

## BACKGROUND

Stiefvater entered into an exclusive brokerage agreement with Hinsdale on June 20, 1985, regarding Hinsdale's house in Pelham Manor, New York. The agreement provided for a commission of 6% of the selling price, but was silent on precisely how and when that commission would be deemed earned.

On June 26, Hinsdale entered into a contract of sale with Craig and Susan Devonshire, prospective purchasers produced by Stiefvater. The contract established a selling price of $265,000 and a closing date of July 15, 1985. In addition, it contained a standard mortgage commitment clause, which provided that if purchaser could not obtain a written mortgage commitment by July 8, either party could cancel the contract. It is undisputed that the Devonshires did not obtain a written commitment by that date; however, the parties' interpretations of subsequent conversations between James Hinsdale and Craig Devonshire are directly at odds.

Stiefvater, in opposing Hinsdale's motion to dismiss, submitted an affidavit by Devonshire in which he states that during telephone conversations on July 9 and 10 Hinsdale expressly agreed not to exercise the right to cancel the contract of sale if a closing could be scheduled for July 11 at the latest. After confirming that funds would be available from his lender on that date, Devonshire telephoned his attorney, who conferred with Hinsdale's attorney and scheduled the closing for the afternoon of July 11.

The Devonshires drove up from their Washington, D.C., residence to attend the closing, but upon arrival at their lender's offices were informed that Hinsdale had cancelled the contract and was refusing to consummate the transaction. The Devonshires' lender states in its affidavit that it was fully prepared to fund the mortgage loan as of midday on July 11, and would have closed that loan but for Hinsdale's absence from the scheduled closing.

By contrast, Hinsdale in his reply affidavit below asserts that he explained to Devonshire during their July 9 telephone conversation that he had another offer in hand, that their contract of sale was officially cancelled, and that the cancellation had been put in writing in accordance with the contract. Moreover, when Devonshire proposed a closing date earlier than that prescribed in the contract, Hinsdale responded by saying Devonshire was attempting to act "out of contract". In fact,

Hinsdale subsequently sold his house to a party who was an "excepted buyer" under the brokerage agreement with Stiefvater; Hinsdale, therefore, was not required to pay a commission with respect to that buyer.

The written cancellation referred to in Hinsdale's affidavit is a letter by his attorney to the Devonshires dated July 8, 1985. Although Hinsdale expressly states that the letter was sent on July 8, his attorney, in an affidavit submitted in support of a motion to stay discovery, states that the "defendants exercised their right under the contract of sale to rescind the agreement * * * by certified mail on July 11, 1985." The affidavit also describes July 11 as "the very same day that defendants rescinded the contract".

In its memorandum and order dated March 27, 1986, the district court mischaracterized the July 8 mortgage commitment date as "the agreed upon closing date." Furthermore, the district court stated that Stiefvater did not deny that Hinsdale had cancelled the contract of sale in writing on July 8, 1985. "Rather plaintiff ignores the written cancellation and instead contends that time for performance—the closing date—was orally extended by defendants' attorney until July 11, 1985." The court concludes that "the entire contract of sale was cancelled by defendants in writing on July 8, 1985, pursuant to the terms of the contract itself", and that "plaintiff has failed to offer any evidence, other than conclusory hearsay, that the buyers were ever ready, willing and able to perform under the contract of sale." In addition, the district court found that because "plaintiff's claim for a brokerage commission is frivolous in light of the undisputed cancellation of the written contract of sale", a sanction under Fed.R.Civ.P. 11 was appropriate.

Stiefvater's motion for reargument was granted, but upon reargument the court adhered to its prior decision and directed the entry of judgment for Hinsdale in the amount of $5,322.82, which represented Hinsdale's attorney's fees and court costs. This appeal followed.

## DISCUSSION

Contrary to the implicit assumptions underlying the district court's order and the parties' appellate briefs, the fact that Hinsdale and the prospective purchasers procured by Stiefvater did not close on their realty contract does not determine whether Stiefvater has earned a brokerage commission. Rather, the law of New York—applicable to this diversity action—clearly provides that, in the absence of an agreement to the contrary, a real estate broker earns his commission when he produces a buyer ready, willing, and able to purchase at terms set by the seller. *Lane-Real Estate Department Store, Inc. v. Lawlet Corp.*, 28 N.Y.2d 36, 42, 319 N.Y. S.2d 836, 840, 268 N.E.2d 635, 638 (1971); *see Nuvest, S.A. v. Gulf & Western Industries, Inc.*, 649 F.2d 943, 947 (2d Cir.1981).

At the moment the broker procures an acceptable purchaser with whom the seller agrees on essential terms, the broker has fully performed his portion of the brokerage agreement and his right to a commission becomes enforceable. *Hecht v. Meller*, 23 N.Y.2d 301, 305, 296 N.Y.S.2d 561, 563, 244 N.E.2d 77, 78 (1968); *Williamson, Picket, Gross, Inc. v. Hirschfeld*, 92 A.D.2d 289, 460 N.Y.S.2d 36, 39 (1st Dep't 1983) (citations omitted); *see Wykagyl Agency, Inc. v. Rothschild*, 100 A.D.2d 934, 474 N.Y.S.2d 811, 812 (2d Dep't 1984) (no commission earned when parties failed to agree on price, date of contract, and date of closing). The broker's right to compensation is not dependent or conditioned upon performance of the realty contract or receipt by the seller of the purchase price, unless the brokerage agreement expressly so provides. *Geller v. New England Industries, Inc.*, 535 F.2d 1381, 1385 (2d Cir.1976); *Hecht*, 23 N.Y.2d at 305, 296 N.Y.S.2d at 563, 244 N.E.2d at 78; *see Williamson, Picket*, 92 A.D.2d at 293–94, 460 N.Y.S.2d at 40 (commission earned upon agreement on essential terms even if every term and condition in written contract not settled) (citations omitted).

The facts of this case, particularly when viewed in a light most favorable to Stiefvater, the party against whom summary judg-

ment was granted, *see Sullivan v. Town of Salem*, 805 F.2d 81, 82–83 (2d Cir.1986), undeniably demonstrate the Devonshires' readiness and willingness to purchase Hinsdale's house. Their financial ability to do so, however, is a closer issue, the determination of which requires further proceedings.

The burden lies with the broker to show that its prospective purchaser was financially. able to meet the purchase price. *Rusciano Realty Services, Ltd. v. Griffler*, 62 N.Y.2d 696, 476 N.Y.S.2d 526, 526, 465 N.E.2d 33, 33 (1984) (mem.); *Blackmore v. Wigne Land Corp.*, 97 A.D.2d 889, 470 N.Y.S.2d 713, 714 (3d Dep't 1983) (mem.) (citations omitted). Conclusory oral testimony by a prospective purchaser in itself will not carry the day. *See Concordant Associates, Inc. v. Slutsky*, 104 A.D.2d 920, 480 N.Y.S.2d 540, 541 (2d Dep't 1984); *Blackmore*, 97 A.D.2d at 889, 470 N.Y.S.2d at 714. Rather, the broker must introduce "some tangible evidence from which a jury could conclude that [the prospective purchaser] would have had the ability." *Globerman v. Lederer*, 281 A.D. 39, 42, 117 N.Y.S.2d 549, 552 (1st Dep't 1952). "Specific and detailed" testimony with "unequivocal references to identified sources" has been held to satisfy this test. *Siegel v. Liese*, 23 A.D.2d 425, 426–27, 261 N.Y.S.2d 400, 402 (3d Dep't 1965).

The broker, however, might be relieved of this burden when the seller and prospective purchaser enter into a formal written contract. " 'Where the vendor "accepts" the purchaser by entering into a contract of sale with him * * * the broker is ordinarily relieved of the necessity of showing that the purchaser was ready, willing and able to perform.' " *Agency, Broad & Cornelia Street, Inc. v. Lavigne*, 97 A.D.2d 934, 470 N.Y.S.2d 729, 730 (3d Dep't 1983) (mem.) (quoting *Door Knob Realty, Inc. v. Northrop*, 86 Misc.2d 675, 383 N.Y.S.2d 484, 485–86 (Sup.Ct.1976)); *see Hommick v. New York Dock Trade Facilities Corp.*, 246 A.D. 844, 285 N.Y.S. 17, 18 (2d Dep't 1936); *Brand v. Nagle*, 122 A.D. 490, 107 N.Y.S. 156, 158 (2d Dep't 1907). The economic rationale behind this rule is that "[t]he seller will be presumed to have

satisfied himself with respect to the purchaser's financial ability before entering into the contract". *Door Knob Realty*, 86 Misc.2d at 677, 383 N.Y.S.2d at 486.

■ But that presumption of satisfaction is not valid when, as here, the contract of sale contains a standard mortgage commitment clause, which, by its very terms, anticipates the purchaser's financial inability to perform unless additional resources are made available through the mortgage. Under such circumstances, if the purchaser fails to procure a mortgage commitment by the agreed date and the seller cancels the contract as a result, the broker would not be entitled to any commission. *Stevens v. Gibbons*, 38 Misc.2d 621, 240 N.Y.S.2d 43, 44 (App.Term 2d Dep't 1962) (per curiam).

■ When viewed in light of these principles, this case presents several genuine issues of material fact regarding Stiefvater's right to a commission. Initially, the trier of fact must determine whether Hinsdale properly exercised his right provided in the standard mortgage commitment clause to cancel the contract of sale on July 8. The substance of the parties' affidavits concerning the events of July 8–11 diverge sharply on this point: Hinsdale contends that he cancelled the contract on July 8 and that subsequent conversations between himself and Devonshire produced no modification or agreement, whereas the Devonshire affidavit filed by Stiefvater asserts that Hinsdale agreed orally to extend the mortgage commitment date if an earlier date for closing the sale could be arranged. Hinsdale's oral agreement to waive his cancellation right in consideration for the Devonshires' agreement to close four days early would not be barred by the statute of frauds and would otherwise be enforceable under New York law. *See Patten v. Nagy*, 86 A.D.2d 890, 447 N.Y.S.2d 334, 334–35 (2d Dep't 1982). Under such facts, therefore, Stiefvater would appear to be entitled to its commission, *see Gallinger Real Estate, Inc. v. Mufale Development Corp.*, 53 A.D.2d 1014, 386 N.Y.S.2d 485, 487 (4th Dep't 1976) (mem.), with the presumption of satisfaction quoted above potentially re-

lieving it of proving the Devonshires' financial ability to perform. But on the affidavits before the court the full and precise content and legal significance of the conversations between Hinsdale and Devonshire cannot be determined. We leave that to the district court to determine after a trial.

Even if Hinsdale had properly cancelled the original contract, that would not end the inquiry, because the subsequent conversations between Hinsdale and Devonshire might well have produced a new agreement with the closing date set for July 11. While that oral agreement might be voidable by Hinsdale for failure to satisfy the statute of frauds, nevertheless, the agreement itself is relevant to determine whether Stiefvater earned its commission. *See* Restatement of Agency § 445 comment d (1958) ("after the oral contract has been made the principal cannot avoid payment to the broker by refusing to perform it"). As the case law cited above clearly demonstrates, for the commission to be deemed earned the seller and the "ready, willing, and able" purchaser need merely come to an agreement on essential terms.

The disputed facts discussed above can be gleaned without reference to the content of Hinsdale's counsel's affidavit offered by Hinsdale in support of a motion to stay discovery, which motion was later withdrawn on stipulation of the parties. Thus, we need not address defendants' argument that we may not consider the document because it is not properly part of the record on appeal. Whether the affidavit may properly be considered in further proceedings below is a question for the district court to decide if it becomes necessary.

■ On remand Stiefvater may seek to prove the Devonshires' financial ability to perform by demonstrating "that at the expected time for closing, funds had been made available to [them] from [their] * * * lending institution[ ]." *Globerman*, 281 A.D. at 43, 117 N.Y.S.2d at 552. The Devonshires, however, would not be considered financially able unless their lender was bound to furnish those funds. *See id.*

The attorney for the Devonshires' institutional lender has stated that the lender was fully prepared to close the mortgage loan on July 11. Presumably, a contractual relationship between the Devonshires and their lender had arisen, under which the lender was required to extend the funds at the appointed time. A written commitment would be some evidence that the lender was bound to make the loan; its absence, however, does not necessarily prove the contrary, particularly when, as here, the absence of the written commitment was attributed solely to the lender's paperwork delays. In short, evidence as to the relationship between the Devonshires and their lender is relevant to their financial ability to perform.

■ Finally, the district judge improperly imposed sanctions below, not only because, as the above discussion demonstrates, Stiefvater's claim was far from "frivolous", but also because rule 11 does not apply to Stiefvater's complaint. As we stated recently in *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir.1986), rule 11 deals exclusively with "the certification flowing from the signature to a pleading, motion, or other paper in a lawsuit", and imposes no continuing duty on the parties or their attorneys. *Id.* at 1274. Stiefvater commenced this action in state court; it was defendants' removal petition that landed it in a federal forum. Therefore, at the time the complaint was signed rule 11 simply did not apply, and the district court had no authority to give it retrospective application.

Rule 11 would have governed only those papers Stiefvater filed in the district court in opposing defendants' motion to dismiss. However, even then sanctions would not have been proper because Stiefvater's attorney could quite readily have formed "the requisite reasonable belief as to the [factual and legal] validity of what is asserted in [those] papers". *Id.* (citing *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985)).

Reversed and remanded for further proceedings.