Abraham N. Geller, J.
The plaintiffs are real estate brokers. They obtained a verdict for full real estate board rates amounting to $9,312:50 based on their claim of an oral agreement with defendant seller for full rates when seller allegedly requested them to procure a buyer for an “ all cash” deal. The court reserved decision on defendant’s motion to dismiss and on its motion to set aside the verdict and for a new trial.
The court has decided, after a review of the record, that the verdict should be set aside on the following grounds — against the weight of the credible evidence on this trial, with respect to a significant aspect of the basic element of plaintiffs’ alleged procurement of the prospective buyer and his alleged agreement with seller on the price of the purported all-cash sale; failure to present proof with respect to the ingredient element of the prospective buyer’s financial responsibility; and because of the confusion induced by the nature of plaintiffs’ claim and evidence concerning the meaning of “ all cash” as applied to this real estate deal, casting doubt on the jury’s implicit finding as to certain issues, particularly whether there was an oral agreement to pay full real estate board rates, necessarily dependent upon a correct understanding of that phrase. It is the combination of these grounds which impels the court in the *879 interests of justice to direct a new trial, for which plaintiffs may obtain and offer the testimony of the prospective buyer as to his alleged procurement by plaintiffs and agreement with seller on the price and as to his financial resposibility, and wherein different and even contradictory meanings of “ all cash ” should be avoided.
Plaintiffs as well as other brokers received the listing of this commercial property from defendant seller as nonexclusive brokers, so that whichever broker effected a meeting of the minds between a prospective buyer and the seller on terms stated by seller would thereupon be entitled to a commission. While, as between seller and prospective buyer, an oral agreement to sell real property may be cancelled or disregarded without any liability for damages, the broker earns his commission as soon as he procures a meeting of the minds, even though no contract is executed. He is not to be deprived of his commission, where he has procured a buyer, ready, willing and able to buy upon terms stated by seller, merely because the natural progress of the transaction to a conclusion has been checked by seller’s wrongful refusal to consummate it (Ostroff v. Doctor, 238 N. Y. 264).
In the usual transaction, mere agreement as to price does not constitute a meeting of minds, since the parties must be brought to agreement with respect to all terms customarily encountered in such a transaction (Matter of Altz, 274 App. Div. 894, affd. 300 N. Y. 607). Such terms would ordinarily include an understanding as to the amounts to be paid on contract, on closing, and on mortgages, and mortgage rates of interest. However, in the unusual situation where seller asks for all cash without fixing any other conditions, the broker is entitled to recover if he produces a buyer ready, willing and able to pay the price fixed by seller. In view of seller’s failure to specify any other conditions, no further act on broker’s part is required to entitle him to his commission, such matters as the amount of down payment and date of closing being then deemed acceptable by reasonable standards (Mengel v. Lawrence, 276 App. Div. 180).
Plaintiffs sent to various prospects, including one Sol Goldman, a brochure containing detailed information supplied by defendant as to the existing mortgages, the outstanding lease of the building, gross and net income derivable therefrom, and seller’s proposed terms of sale. Plaintiffs claim that at some subsequent point, when defendant allegedly stated he wanted an “all-cash deal” because he had to do something about “temporary financing” on the property, they informed him *880 that, for an all-cash deal, they were entitled to the full real estate hoard rates, though conceding that full rates on the total purchase price on a terms basis deal were customarily not paid; and that defendant orally agreed thereto. Defendant denied any such agreement.
To resolve the issue as to whether such an agreement had been made, it was important that the jury, as triers of the facts, have a clear understanding of the term, “all-cash deal”, as applied to this transaction, since that special circumstance was claimed by plaintiffs as the rationale for this alleged agreement for full rates. Plaintiffs, whose complaint referred to their having procured Sol Goldman to offer terms ‘ ‘ which defendant then and there stated to be acceptable, to wit, $275,000, all cash, free and clear of mortgages ”, testified at first that an all-cash deal meant ‘1 no mortgages on the property at all * * * free and clear of liens and encumbrances ’ ’; but thereafter gave a different answer to their counsel’s question, that “ it means the seller would not take back any mortgage as part of the price.” In this case their first answer would mean $275,000 cash from buyer, with seller arranging (for some reason of its own) to satisfy the existing mortgages; while the second answer would mean merely $65,000 cash from buyer over and above existing mortgages.
At various points during the trial these different meanings were confusingly given, repeated references being to “$275,000 all cash”, “an all cash basis,” “ temporary financing ”, but also to “ $275,000, all cash over the mortgages ”. If the jury’s understanding was that $275,000 cash was to be paid, it might have reasoned that plaintiffs were justified in asking for full rates and that defendant, despite its denial, had agreed thereto; whereas, if the jury had understood that only $65,000 cash was to be paid, it might have decided that the evidence did not support the disputed agreement for a $9,312.50 brokerage fee. In any event, the issue was confused and, since the verdict may be the product of such confusion, it should not be permitted to stand, particularly in the light of the other grounds for setting it aside.
Plaintiff’s claim of procurement of Sol Goldman as buyer and his alleged agreement with defendant on a “ $275,000 all-cash ” deal rests entirely on a certain telephone conversation. Plaintiffs, who also are attorneys, kept in their files memoranda of their various transactions. They had a note in which they had summarized this conversation. However, they gave on the trial a somewhat different version of it from that testified to on their examination before trial.
*881 In their examination they had stated that Mr. Vernon, president of defendant corporation, had listened in on an extension phone at their office to the conversation, during which the said Sol Goldman had finally offered $275,000 all cash, and, after they had hung up, Vernon was reported to have told plaintiffs “ I will take that deal, I will be in to see you tomorrow.” In the trial version plaintiffs testified that Vernon had been introduced to Goldman over the phone and that, when Goldman finally offered the $275,000, Vernon had reportedly said directly to Goldman 1‘1 will close the deal, I will take that. ’ ’
No explanation for the different trial version was offered, other than that the two plaintiffs had, since their examination, refreshed one another’s recollection. While there may be some question as to whether their pretrial version sufficiently established a meeting of the minds of buyer and seller, it will be noted that the trial version, if believed, would definitely qualify as such. If the parties actually meant $275,000 in cash, that alone was sufficient; and if they meant all cash over the existing mortgages, Goldman had received the brochure and knew all the conditions. Moreover, it has been said that an important factor to be considered on the question of good faith is whether the' broker has introduced the prospective buyer to the seller (Schwartz, Trial Lawyers’ Library, Real Estate, Brokerage, Employment Contracts, p. 153). Whatever the reason for the change in testimony, it must raise a doubt.
Vernon testified that, when he had been in plaintiff’s office, there had been a telephone conversation with somebody, whose name had not been mentioned; but that he didn’t listen in on the extension; and that plaintiffs had informed him later that an offer of $260,000 had been made, which was not satisfactory.
Vernon did not thereafter get in touch with plaintiffs about this property. Plaintiffs testified that they called him several times, leaving messages, but getting no response. More than two months later they learned that defendant had sold this property to Goldman and another. However, they said they were then working on another deal for defendant and therefore did nothing about this matter until that was concluded. This action was not commenced until more than eight months after the telephone conversation.
The broker named in the contract of sale as the one who -brought about the sale testified to discussing this matter with Sol Goldman and finally obtaining an offer of $275,000. The contract was taken in the name of a corporation and actually was for a price of $275,000, subject to existing mortgages amounting to $210,000, with cash of $65,000, and payment to *882 the broker of a $2,500 commission. The deed ran to Sol Goldman and one Alex DiLorenzo, Jr., “ each having an undivided one-half interest ”.
Plaintiffs relied on certain inferences purportedly to be drawn from these circumstances and from Vernon’s testimony, but, otherwise, their case on this trial depended entirely on the credibility of their unsupported testimony. Their two different versions of the crucial telephone conversation, joined with their ■subsequent failure to take appropriate steps, although an explanation is offered, suggest that, unless made credible by a more complete presentation of all the available evidence, a finding that they had established by a preponderance of the evidence that they had brought about a meeting of the minds may be regarded as against the weight of the evidence. The court has not concluded that plaintiffs’ evidence is incredible, but rather that, for the reasons indicated, Goldman’s testimony should be obtained, so that a jury may decide the whole issue on a more complete presentation of the facts, whatever testimony is elicited from him on direct and cross-examination.
In view of the circumstances, the court inquired of counsel, in the absence of the jury, whether Goldman would testify, and was informed by plaintiffs’ counsel that his process server had been unable to serve him with a subpoena. With the consent of both counsel a court attache was authorized to call to urge him to come to court and testify, but, despite several attempts, he could not be reached.
His testimony is of importance not only with respect to the telephone conversation and the facts as to the negotiations leading up to the purchase of this property but also, as indicated below, his financial responsibility, concerning which no tangible legal evidence was presented on this trial.
For the new trial plaintiffs may examine Goldman before trial as a witness upon a showing of “ special circumstances ” (Civ. Prac. Act, § 288). That requirement should be satisfied by the situation here revealed of his unavailability on this trial, in addition to the fact that he was a participant in the transaction and also the fact that he may be regarded as a hostile witness by reason of the contract provision for the other broker. His deposition could then be read in evidence on the new trial upon satisfactory proof “ that for any reason his attendance cannot be compelled by subpoena, with the exercise of reasonable diligence ” (Civ. Prac. Act, § 304).
Goldman’s testimony could supply the tangible evidence, missing on this trial, of his financial ability to put up the amount of cash needed for the 11 all-cash ’ ’ deal allegedly procured by *883 plaintiffs — whether $275,000 or $65,000, as the evidence should clearly indicate. A broker to be entitled to commissions must prove not only that he procured a buyer ready and willing to purchase on seller’s terms, but also that he was financially able to do so. The jury determines that question from evidence showing available assets or resources or definite commitments from others.
The court ruled out on this trial hearsay statements concerning Goldman’s real estate operations and might have dismissed the complaint without prejudice for failure of proof, but this would only have meant that another action would have been commenced. While reserving decision on motions, the court submitted this issue to the jury in the form of deciding whether defendant had regarded and accepted Goldman as the true principal in the contract of sale executed two months later and whether, if so, it found sufficient identity between the terms of that contract and plaintiff’s deal to warrant the conclusion that defendant had thereby indicated its satisfaction with his financial ability and waived the requirement of such proof (Rosenblatt v. Bergen, 237 N. Y. 88; Goldmann v. Goldmann Realty Corp., 227 App. Div. 28; Jaffe v. Lederer, 113 Misc. 356).
It is apparent that the jury resolved that issue in favor of plaintiffs. However, on re-examining this question on the basis of the entire record, the court has concluded that the contract of sale to a corporation, providing for $65,000 cash, and consummated by a deed to Goldman and Di Lorenzo as equal owners, cannot be equated with plaintiffs’ deal with Goldman alone for “ $275,000 all cash”, even if this meant only $65,000 cash. The contract thus cannot by itself be deemed evidence that Goldman would have been financially able to pay for this property in accordance with the terms arranged by plaintiffs (cf. Globerman v. Lederer, 281 App. Div. 39). It is anticipated that plaintiffs will be able to present proper proof of his financial ability on a new trial. The verdict must be set aside for failure of such proof on this trial.
The motion to dismiss is denied. The motion to set aside the verdict is granted and the case set down for trial on the General Jury day calendar of January 21, 1963.