## ATLAS STEAMSHIP CHARTERING CORP., Plaintiff-Appellant,

### v.

## DILLINGHAM CORPORATION and Hawaiian Tug and Barge Co., Ltd., Defendants-Appellees.

### No. 206, Docket 71–1360.

United States Court of Appeals, Second Circuit.

Argued Nov. 15, 1971.

Decided Jan. 19, 1972.

Hays, Circuit Judge, dissented and filed opinion.

See also, D.C., 314 F.Supp. 1118.

Hollis M. Walker, Jr., New York City (Haight, Gardner, Poor & Havens, New York City), for plaintiff-appellant.

Jerome Doyle, New York City (Cahill, Gordon, Sonnett, Reindel & Ohl, and John R. Vaughan and Eric Harris, New York City, of counsel), for defendants-appellees.

Before MOORE, HAYS and MULLIGAN, Circuit Judges.

MOORE, Circuit Judge:

Atlas Steamship Chartering Corp. (Atlas), the plaintiff-appellant, brought this action to recover a brokerage commission from defendants-appellees, Dillingham Corporation (Dillingham) and Hawaiian Tug and Barge Co., Ltd. (Hawaiian), a subsidiary of Dillingham and the owner of barge "HTB–25." In its complaint, Atlas alleged that it had procured a buyer who was ready, willing and able to purchase barge HTB–25 which Dillingham had offered for sale, that the transaction was not consummated because defendants unjustifiably withdrew the barge from the market and that having fulfilled all its obligations, Atlas was entitled to a commission of 3 per cent of the barge's $1,000,000 sale price. At the conclusion of the trial but before submission to the jury, defendants moved that "the plaintiff has failed to produce sufficient evidence to raise a question for the jury, failed to produce sufficient evidence that his [sic] plaintiff is entitled to a judgment on the complaint." The trial judge granted the motion.

### The Facts

The exhibits and testimony introduced at trial reveal a relatively brief process of negotiation concerning the possible sale of one of defendants' barges. The process was initiated by Mr. Garson, president of Atlas, on January 27, 1969, when he sent a letter to a Mr. Riddle of Dillingham inquiring whether he had a

barge for sale that would meet enumerated specifications. The invitation to offer a barge was conditioned upon "our customer's approval after inspection."

On February 11, 1969, Mr. Riddle responded by letter describing a barge, the HTB–25, which Mr. Garson and his customer "might consider." A price of $1,000,000 cash was quoted. The letter, however, also indicated that Dillingham "would have to complete some of [its] . . . commitments in order to set a release date for the HTB–25."

The following day Mr. Garson telephoned Mr. Riddle to ask about his earlier inquiry as he had not yet received Mr. Riddle's letter of February 11, 1969. This telephone call was confirmed in a letter sent by Mr. Riddle later that same day, February 12, 1969. In this second letter, Mr. Riddle stated:

"[i]t is expected that we will complete our commitments within about 60 days. We are now talking to our charterers and I expect to have an answer from them within approximately one week on whether they intend to go further with the charter or will terminate."

The letter expressed appreciation for Mr. Garson's interest and the hope that "we will be able to put something together with you." Shortly thereafter, Mr. Garson communicated with Mr. Williams, president of the Gulf Atlantic Towing Corporation (Gulf), who was interested in purchasing a barge. This conversation was confirmed in a telegram sent by Mr. Williams to Mr. Garson on the morning of February 13, 1969. The telegram indicated that Gulf was "agreeable to negotiate." Atlas was requested to "advise location for survey and [to] forward all other information available."

After receiving Mr. Williams' telegram, Mr. Garson cabled Mr. Riddle to inform him that his client was "seriously interested" and "prepare[d] to pay cash subject to survey and drydocking inspection." The telegram also indicated that Mr. Garson was asking for a 3 per cent commission "when [the] deal is consummated."

When this telegram received no immediate response, Mr. Garson decided to telephone Mr. Riddle. Upon contacting him in Hawaii on February 13, 1969, as Mr. Garson testified, Mr. Riddle stated that he had received the telegram and that everything was "a hundred percent" as regards the proposed sale and commission. According to Mr. Garson, however, the promised confirmation was never received.

On February 17, 1969, Mr. Riddle informed Mr. Garson that the barge was not for sale as the charterers had decided to extend their agreements.

About one week later, on February 24, 1969, pursuant to a request by Mr. Garson, Mr. Williams sent a telegram to Mr. Garson stating that "[a]s previously advised you we were and are ready to buy barge HTB–25 on terms offered."

At trial Mr. Williams' deposition was read to the jury. He testified that he never authorized Mr. Garson to purchase the barge, that he never had sufficient information concerning the barge to be seriously interested in purchasing it and that he was never ready or willing to purchase the HTB–25.

■ Any analysis of a question regarding a broker's right to a brokerage commission rests on the proposition that a broker must procure a customer who is ready, able and willing to buy upon the terms offered by the seller to earn a commission.

■ The only question material on appellate review is whether there were facts from which a jury might have concluded that a sale had been consummated. Ever since Sibbald v. Bethlehem Iron Company, 83 N.Y. 378 (1881), and probably before, the law of New York has been clear that "the duty assumed by the broker is to bring the minds of the buyer and seller to an agreement for a sale, and the price and terms on which it is to be made, and until that is done his right to commissions does not accrue" at 382. And so here.

The defendants made no definite offer of sale. To the contrary, plaintiff at the outset had been informed that defendants had commitments with respect to the barge from which they would have to obtain a release were the barge to be available. On February 12th plaintiff was advised that the status of the then-existing charter of the barge, namely, its continuance or termination, might be expected "within approximately one week." By letter of February 17th plaintiff still spoke in terms of "in the event the deal is consummated" and what their customer might purchase "if he does not purchase yours [your barge]."

Thus plaintiff offered no proof from which even by inference there could be a finding that a deal had been consummated—a necessary condition to the earning of a commission.

The trial court properly granted defendants' motion to dismiss.

Judgment affirmed.

HAYS, Circuit Judge (dissenting):

The majority affirms the dismissal of plaintiff's claim on the ground that there were no "facts from which a jury might have concluded that a sale had been consummated." But a broker who produces a buyer ready, willing, and able to perform is entitled to a commission whether or not a sale has been consummated. Wagner v. Derecktor, 306 N.Y. 386, 390, 118 N.E.2d 570 (1954); Hecht v. Meller, 23 N.Y.2d 301, 305, 296 N.Y. S.2d 561, 244 N.E.2d 77 (1968).

There was ample evidence upon which the jury could have found that Dillingham was prepared to sell the barge at the time Atlas produced a willing buyer.

The district judge apparently granted appellees' motion for a directed verdict on the ground that appellant did not introduce sufficient evidence to establish Gulf's ability to pay the price asked for the barge. However plaintiff showed that Gulf was owned by General Tire and Rubber Company; that Gulf purchased another tug in early 1969 and was at that time having another one built; and that the purchase would be financed either by a loan from the parent company or by means of a mortgage. This evidence, though meager, was sufficient to support the inference that Gulf had the ability to pay.